711 P.2d 625

**The STATE of Arizona, Appellee,**

**v.**

**Samuel Oscar ROSTHENHAUSLER, Appellant.**

**Nos. 2 CA–CR 3760, 2 CA–CR 3761–2.**

Court of Appeals of Arizona, Division 2, Department A.

Sept. 9, 1985.

Review Denied Dec. 10, 1985.

Robert K. Corbin, Atty. Gen. by William J. Schafer III and Joseph T. Maziarz, Phoenix, for appellee.

Frederic J. Dardis, Pima County Public Defender by Carla Ryan, Tucson, for appellant.

BIRDSALL, Presiding Judge.

Samuel Rosthenhausler appeals from judgment of conviction and sentence on five counts in superior court Cause No. CR–12906, as follows: Count 1, armed robbery, 15 years, 9 months; Counts 2 and 3, aggravated assault, 11 years, 3 months each; Count 4, armed robbery, 17 years, 9 months; Count 5, aggravated assault, 13 years, 3 months. Counts 4 and 5 were enhanced due to the provisions of A.R.S. § 13–604(H), and were ordered to run consecutively to the first three counts. Pursuant to A.R.S. § 13–604(G), appellant was ordered to serve at least two-thirds of the sentences prior to release.

The facts surrounding appellant's convictions concern two incidents occurring in March 1984. In the first, appellant entered a convenience store at 11 p.m., selected a six-pack of Budweiser beer, and then produced a sawed-off shotgun. He demanded that the cash registers be emptied, attempted to obtain money from the gasoline computer, which contained no money, and demanded money from the safe, which the two clerks in the store could not open. He then took his beer, two half-gallon bottles of Seagrams Seven Crown liquor, and the money bag, and attempted to leave the store. Because one door was locked and his arms were full, he required assistance leaving the store.

In the second incident, another convenience store, two miles away, was robbed 13 days later. After again selecting Budweiser beer, the appellant robbed the clerk at gunpoint, taking all cash and food stamps. He additionally demanded Camel cigarettes and a bottle of Seagrams Seven Crown, but was informed the store did not carry hard liquor.

Appellant's arrest followed a third hold-up, on March 21, which was not charged in CR–12906. Five days after the second robbery, the first store was again entered by appellant. He inquired about the milk and was told that the morning delivery would not arrive for four hours. He then said he would settle for Coors beer, but was informed it was after 1 a.m. and the store could not sell beer. He then selected bread, meat, and cheese, and brought them to the counter, where he requested two bottles of Seagrams. The clerk was obtaining this from the shelf when he realized he also could not sell liquor, and began explaining this when he realized appellant had pulled a gun. Appellant demanded the Seagrams and a bottle of Black Velvet, the clerk obtained these, and the appellant further demanded all the cash, food stamps, and change. Appellant then requested money from the gasoline computer, then the second cash register, which the clerk demonstrated to him was empty. After helping himself to some candy, the appellant made his own way out the door, got in a waiting car, and drove off. He was observed by a sheriff's deputy on routine patrol, and pursued upon a signal from the

clerk. He was apprehended about a mile from the store, he and the driver were taken from the car, and upon learning by radio that the store had been robbed, the deputy searched the car. No gun was found in the car, but later, upon walking along the road, officers located the gun on the shoulder of the road.

A fourth incident concerning appellant was related at his trial. Two days after the first holdup, appellant was arrested in a traffic stop after being observed driving erratically. The arresting officer testified that appellant was combative, profane, and uncooperative with the officers following the stop. While he was being arrested, another officer approached his car and shone a light into it. On the back seat, a sawed-off shotgun was found and seized by the officers.

We will discuss additional facts as necessary in our discussion of the issues.

The appellant was sentenced on October 29, 1984. In the meantime he was tried and found guilty of seven additional crimes in superior court Cause No. CR–12907. These convictions and his subsequent sentencing on November 1, 1984, were as follows: Count 1, armed robbery on March 20th, 1984, 30 years' imprisonment; Count 2, aggravated assault, also on the 20th, 22 years; Count 3, aggravated assault, on the 20th, 22 years; Count 4, armed robbery on March 21st, 1984, 30 years; Count 5, aggravated assault, also on the 21st, 22 years; Count 6, armed robbery, also on the 21st, 30 years; and Count 7, aggravated assault on the 21st, 22 years.

All of these seven sentences included two additional years because the crimes were committed while the appellant was on release on other felony charges. A.R.S. § 13–604(M) (Supp.1984). The offenses were all found to be repetitive and dangerous. Counts 1–5 were concurrent sentences and the sentences in Counts 6 and 7 were pronounced consecutive to the sentences in Counts 1–5.

The offenses committed on March 21 and charged in Counts 6 and 7 were based upon evidence of the conduct which was admitted in the first trial and which we have already related.

The crimes of March 20, Counts 1–3, arose out of very similar facts. Briefly, at about 9:30 p.m., the appellant committed an armed robbery at another convenience market using what was described as a pistol. The assistant manager and a friend were the victims of the assault charges. The pistol was pointed at both of them.

The evidence of the crimes in Counts 4 and 5 revealed another armed robbery at a convenience market at 1:30 a.m. on March 21. A gun was pointed at the clerk, resulting in the assault conviction.

The appeals in both superior court cases have been consolidated. We affirm all the convictions and sentences in both appeals.

## I.

In the appeal from Cause No. CR–12906, the issues presented are:

1) whether the admission of the evidence of the arrest when the shotgun was seized and the uncharged robbery of March 21 was reversible error;

2) whether the two charged incidents should have been severed;

3) whether the in-court identification of the appellant by two of the victims should have been suppressed;

4) whether requiring the appellant to roll up his sleeve and show a tattoo to the witness violated his right to a fair trial; and

5) whether compelling the appellant to be fingerprinted to prove his identity during proof of prior convictions was error.

### Admission of the Other Bad Acts

■ The evidence concerning the seizure of the sawed-off shotgun was clearly admissible to complete the story of the two charged crimes. *State v. Collins*, 111 Ariz. 303, 528 P.2d 829 (1974) (evidence of defendant's heroin addiction held admissible in armed robbery-murder conviction). The first robbery of March 3 involved the use of a shotgun, the second of March 16, a

handgun. The seizure of the shotgun on March 5 explained the use of the different weapon.

■ The evidence of the March 21 robbery was also clearly admissible to show a common scheme or plan and to identify the appellant as the perpetrator of both crimes. *State v. Harding*, 137 Ariz. 278, 670 P.2d 383 (1983), cert. denied, *Harding v. Arizona*, 465 U.S. 1013, 104 S.Ct. 1017, 79 L.Ed.2d 246 (1984). The similarities of the three incidents are overwhelming.

### Denial of Severance

■ Again we find the decision to deny severance of the two charged robberies was clearly correct. The evidence demonstrates that the appellant was pursuing a common scheme or plan. Rule 13.3(a)(3), Rules of Criminal Procedure, 17 A.R.S.; Rule 404(b), Arizona Rules of Evidence; *State v. Hanson*, 138 Ariz. 296, 674 P.2d 850 (App.1983). The appellant was not unfairly prejudiced by the joinder since, as we have explained in issue one, evidence of the March 3 offense would have been admissible in the trial of the March 16 offense and vice versa. *State v. Hanson*, supra.

### Identification Issue

We are concerned here with the identification of the appellant by three witnesses. Olivia Wilson and Phillip Bardo, victims in the March 3 robbery, and Jerry Morgan, the victim of the March 16 incident.

■ There is no merit to the contention that Bardo's identification should have been suppressed. He first identified the appellant from a photo lineup. The appellant does not contend that the lineup was suggestive. Rather, he claims Bardo was not positive about his identification. At that lineup Bardo said the man who held him up "looked very much like" appellant's photo in the lineup. Bardo then identified the appellant again in person at a Dessureault hearing and then at trial. There was no error in permitting his in-court identification.

■ Neither Wilson nor Morgan were able to identify the appellant from photo lineups. They each first identified him at the Dessureault hearing. The appellant was the only person at the hearing in handcuffs. He was in custody and sitting with his attorney in the courtroom. The state concedes that these identifications were unduly suggestive. See *State v. McCall*, 139 Ariz. 147, 677 P.2d 920 (1983), cert. denied, *McCall v. Arizona*, 104 S.Ct. 2670, 81 L.Ed.2d 375 (1984). Therefore, we must examine the record to see if there was sufficient indicia of reliability surrounding the identifications to overcome this suggestiveness. *Id.* We find that there was.

*McCall* sets forth five factors to be considered for reliability:

1) the opportunity of the witness to view the criminal at the time of the crime;

2) the witness' degree of attention;

3) the accuracy of the witness' prior description of the criminal;

4) the level of certainty demonstrated by the witness at the confrontation; and

5) the length of time between the crime and the confrontation.

*State v. McCall*, supra, at 154, 677 P.2d at 927, citing *Neil v. Biggers*, 409 U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972). Wilson testified that she was "watching" the perpetrator of the March 3 holdup for at least ten minutes prior to the time he produced the shotgun. She watched him as he selected a six-pack of beer. After appellant walked to the counter, she noticed that he was hiding something. Wilson stepped toward him when he "sneered or grinned" and pulled out a shotgun from under his jacket. She estimated that once the shotgun was pulled out the robbery took five or six minutes. Bardo estimated that the robbery consumed approximately fifteen to twenty minutes. Wilson testified that the store had "very good lighting." She also testified that she had a good opportunity to view appellant "very close up." Appellant's face was fully exposed since the bandana he wore covered only the top of his head.

Wilson's attention was on appellant for the entire time he was in the store. The only other person in the store was Bardo. There can be no question that appellant had Wilson's undivided attention once he pulled out the sawed-off shotgun.

Wilson testified that the composite drawing prepared by the sheriff's department, based upon her description, was not "very good." The fact that she could not identify appellant's picture at the photo lineup goes to her credibility as a witness and not to the admissibility of her subsequent identifications. *State v. McCall*, supra.

Wilson's identification of appellant at the Dessureault hearing was unequivocal and based solely upon her recollection of the March 3 holdup. Although the identification took place approximately six months after the holdup, under the "totality of the circumstances," this alone does not render the identification unreliable. *Id.* The remaining factors are more than sufficient to establish the reliability of Wilson's identification of appellant. Moreover, considering the circumstances under which Wilson observed appellant, there is no reason to believe that she would ever forget what he looked like.

Morgan's identification of appellant at the Dessureault hearing is also supported by significant indicia of reliability. Morgan testified that appellant stood only two feet from him during the holdup. He estimated that appellant was in the store for three or four minutes. He testified that he had a sufficient opportunity to observe appellant and note the details of what he looked like. He noted that appellant wore a bandana, but it covered only his head. Morgan also stated that the store was well lighted. Again, there can be no question that appellant was the subject of Morgan's undivided attention for the entire time he was held at gunpoint. The record indicates that Morgan's description of the perpetrator fit appellant and that the composite drawing based upon Morgan's description of the perpetrator resembled appellant.

Morgan positively identified appellant as the perpetrator of the March 16 holdup.

As with Wilson's identification, the fact that the identification occurred six months later does not negate its reliability. Likewise, the fact that he did not identify appellant's picture at the photo lineup goes to his credibility as a witness and not the admissibility of his subsequent identifications. State v. McCall, supra.

Based upon the totality of the circumstances, the trial court did not abuse its discretion in denying appellant's motion to suppress either Wilson's or Morgan's identification of him at trial. See also *State v. Alvarez*, No. 6477, filed July 2, 1985, 145 Ariz. 370, 701 P.2d 1178.

### Tattoo and Fingerprinting

Tony Barnes was the victim of the uncharged robbery of March 21. He testified he could identify the man who robbed him by a tattoo of an Indian maiden he saw on his left forearm. The court then granted the state's request to have the appellant roll up his sleeves. Over objection, this was done, revealing the tattoo.

■ The appellant contends compliance with Rule 15.2, Rules of Criminal Procedure, 17 A.R.S., was necessary. This rule applies to pretrial discovery and is inapplicable. *State v. Tamplin*, 126 Ariz. 175, 613 P.2d 839 (App.1980). As in *Tamplin*, which involved fingerprints, the appellant's identity was an issue and the procedure was proper. There is no constitutional violation. *United States v. Dionisio*, 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973). See also *State v. Sanchez*, 130 Ariz. 295, 635 P.2d 1217 (App.1981), and *State v. Asbury*, 124 Ariz. 170, 602 P.2d 838 (App.1979). The fingerprinting issue is controlled by the decision in Tamplin, supra.

### II.

■ Turning now to the appeal of superior court cause No. CR 12907, the only issue is whether the state should have been required to prove that the gun was not inoperable as an element of the aggravated assault charges. The appellant was convicted of three counts of armed robbery

and four counts of aggravated assault. The assaults were aggravated because of the use of a deadly weapon. A.R.S. § 13–1204 A(2). Deadly weapon is defined in A.R.S. § 13–105(9) as "anything designed for lethal use. The term includes a firearm." Firearm is then defined in A.R.S. § 13–105(12) as:

"any loaded or unloaded pistol, revolver, rifle, shotgun or other weapon which will or is designed to or may readily be converted to expel a projectile by the action of expanding gases, except that it does not include a firearm in permanently inoperable condition."

A.R.S. § 13–1904, Supp. 1984, provides:

"A person commits armed robbery if, in the course of committing a robbery ... such person ...:

(1) Is armed with a deadly weapon or a simulated deadly weapon; or

(2) Uses or threatens to use a deadly weapon ... or a simulated deadly weapon."

Thus, the legislature has prescribed a somewhat different test to determine whether one is "armed with" or "uses" or "threatens to use" a deadly weapon for armed robbery and to elevate an assault into an aggravated assault. An armed robbery may be committed with a simulated gun; however, the use of a simulated gun would be insufficient to satisfy that element of aggravated assault, and a firearm in permanently inoperable condition would not satisfy the element requiring the use of a deadly weapon for aggravated assault.

This difference did not become a problem in the trial until the closing argument of appellant's trial counsel.[1] No witness was asked whether the gun used in the commission of the assaults was operable. Conversely, no evidence suggested in any way that it was inoperable. There was evidence, however, concerning the gun used in each of the assaults. As to Count 2, the victim, Mary Dailey, testified that appellant pointed a pistol at her and that the gun was chrome-plated. William Kjellstrom, the victim of Count 3, testified that the perpetrator of the March 20 holdup pointed a gun at him when he ran out of the store and confronted appellant. Appellant told Kjellstrom that if he didn't back off he would shoot him. Kjellstrom described the gun as being "shiny" or chrome-plated. Alex Badilla, the victim in Count 5, testified that the perpetrator of the first March 21 holdup pointed a gun at him. He described the gun as a .25-caliber automatic handgun. He stated that he believed the gun was silver. Tony Barnes was the victim of the final aggravated assault count (Count 6). Barnes testified that the perpetrator of the second March 21 holdup pulled out a small nickel- or silver-plated pistol and pointed it at him. In addition, two photographs of a gun were admitted into evidence. These were of the handgun found at the time of appellant's arrest on March 21. The handgun itself was marked as an exhibit and shown to Dailey, Barnes, and another witness. Each of them testified it looked like the gun.

In her closing, defense counsel argued:

"Ladies and Gentlemen, you heard a lot of testimony about how a gun was used and how it was pointed at people and how it was threatened to be used. But I don't believe you heard any testimony about whether that gun worked. And that's one thing the State had to prove to you, is whether or not that gun is a gun that's in permanently inoperatable [sic] condition or not.

So when you go back to the jury room, you can't just suppose that it works or suppose that it could have been used because in this case we have no evidence that it was fired. No evidence that anything but threats. And unless you find that it in fact it was a firearm and that it was, and the State has not proven to you that that gun is in operable condition and/or was in inoperable condition at the time that these robberies took place back

1. A different attorney in the Pima County Public Defender's Office represented the appellant at trial.

on March 20th or 21st. And if the State hasn't proven that, then you must find Sam not guilty of each of the charges because in order to be guilty of a robbery, an armed robbery, that has to be a firearm in permanently operable condition or it has to be at least not in inoperable condition.

And the same is true for aggravated assault. It requires a firearm that is in, that is, does not include a firearm in permanently inoperable condition. And that is something that you'll have to decide. And if you find that that is not true, then you'll have to find him not guilty of armed robbery, not guilty of aggravated assault.

And in this case we have no evidence that the firearm was in fact operable ..."

Immediately after defense counsel finished, the prosecutor, outside the presence of the jury, objected to that argument. After extended argument, the trial court correctly recognized that even a simulated gun was sufficient to satisfy that element of armed robbery. The trial court also correctly ruled that since no evidence suggested the gun was inoperable, the state was not required to prove that it was not permanently inoperable. The court found that the appellant had never raised this issue during trial and that the exception was in the nature of an affirmative defense and not an element of the crime. In other words, the state had no burden to prove the gun was not permanently inoperable absent evidence sufficient to generate a reasonable doubt as to the inoperability of the gun. See *State v. Berndt*, 138 Ariz. 41, 672 P.2d 1311 (1983) (insanity defense under former law).

Although this appears to be a question of first impression in our state, other jurisdictions have arrived at the same conclusion. In *People v. Gaines*, 103 Cal.App.3d 89, 162 Cal.Rptr. 827 (1980), the California Court of Appeals held that California's statute

which enhanced punishment for certain offenses committed while armed with a firearm was applicable only if the perpetrator was armed with an operable firearm.[2] Nevertheless, the court held that the defendant's contention that the firearm was inoperable was in the nature of a special defense, the burden of so establishing being upon the accused. The court further noted:

"[F]or practical reasons the burden of explanation or of going forward with the evidence is sometimes placed on a party-opponent who has information lacking to the one who asserts and seeks to establish a fact. This evidentiary principle is frequently used in our criminal law.... The principle acts as a sort of evidentiary presumption which must be overcome by the accused.

Thus it has been held in cases such as that before us, that there is no 'requirement upon the People ... to prove [the gun] was operable;' the defendant himself in such a case is required to raise 'a reasonable doubt' as to his special defense; and the 'burden of proof' lies with the defendant. When the burden is not met, the People's 'prima facie showing' will be sufficient. 'Further, a demand for affirmative proof of operability would allow the defendant to frustrate the statute [as here] by getting rid of the gun or concealing it. In view of the discerned objective[s] of [such statutes], it is enough that the prosecution produce evidence of a gun designed to shoot and which gives the appearance of shooting capability' And where the accused shall himself produce evidence on the point, resolution of the conflict raised by the People's evidence or the inference or presumption therefrom is a factual issue to be resolved by the trier of fact." 162 Cal.Rptr. at 832–33 [citations omitted].

The court concluded that, although the trial court had improperly instructed the jury

---

**2.** This holding was overruled on other grounds in *People v. Nelums*, 31 Cal.3d 355, 182 Cal.Rptr. 515, 644 P.2d 201 (1982). There the California Supreme Court interpreted California's statute as applying even if the firearm was inoperable, so long as "the weapon was designed to shoot and gave the reasonable appearance of a shooting capability." 182 Cal.Rptr. at 517.

that the firearm need not be operable, the error was harmless since the defendant offered *no evidence* that the handgun used in committing the offense was inoperable.

In *People v. Mason,* 292 N.W.2d 480 (Mich.App.1980), the defendant, who had been convicted of possessing a firearm during the commission of a felony, appealed on the ground that the prosecutor had failed to prove that the gun was in operable condition. The Michigan Court of Appeals held:

> "[T]he prosecutor need not present proof of operability as an element of the prima facie case in a felony-firearm prosecution. To hold otherwise would prevent prosecution under the statute [M.S.A. § 2212(20) ] in cases where the weapon is not recovered, even though the victim testifies to its existence. . . .
>
> In cases where the defendant raises the issue of whether a particular weapon is operable, and, as such, a 'firearm' under the statute, the prosecution may have to present evidence on operability to convince the trier of fact that an operable 'firearm' was actually present. In order to survive a request for a directed verdict, however, no such evidence is needed. In the instant case, while the prosecution was under no duty to present evidence of the gun's operability, it did establish that certain .22-caliber revolvers used in the commission of the charged felony possessed the necessary firing mechanisms and were in apparent working order. This showing went far beyond what was necessary to establish a prima facie case. . . ." 292 N.W.2d at 482.

We do not believe that by "excepting" from the definition of "firearm" weapons which are in a permanently inoperable condition, the legislature intended that the state be required to prove the non-existence of the exception. That is, the state is not required to prove that the weapon is *not* permanently inoperable to establish a prima facie case. The legislature has chosen to provide an "exception"; however, the burden is upon appellant to come for-

ward with evidence establishing a "reasonable doubt" as to the operability of the firearm. The state is not relieved of proving the elements of the offenses charged; however, the state need not disprove beyond a reasonable doubt appellant's affirmative defense of permanent inoperability of the firearm. See also *Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977).

■ The appellant further contends that the prosecutor's rebuttal argument was so confusing on these issues that it created reversible error. We disagree. We quote that portion of the argument:

> "And by the way, on the last point, you heard the indictment read to you when we first started, Ms. Kettlewell respectfully is wrong on that, about whether or not we need to show the gun was operable. We don't even have to show it's a gun. You see here the indictment, or you'll remember the indictment is to use a gun or simulate using a gun.
>
> You can have a piece of wood that might look like a gun and walk in, and that's robbery. We changed our statute years ago to get that particular situation, 'cause a lot of them get away and we don't catch them for days, maybe even months and years. How do you ever come back and show that the guy has a gun that will work? You can't because you're not going to find a gun.
>
> You think they are going to let them out that way? Huh-uh. No way. Statute has changed. You can have a bar of soap cut like a weapon, that's enough, because we don't always get the guns. They take off, and they throw it off in a river and lose it, do you think we are going to forget that is an armed robbery? Huh-uh.
>
> The use of a weapon or simulating a weapon is all you need. So that is not really correct on that, and you'll hear that shortly."

Although the argument may have been confusing on whether a simulated gun is sufficient in aggravated assault, we do not find prejudice. The simulated gun argu-

ment is a red herring. Nothing in the record suggests any of the guns used were anything but real. Further, the court's instructions limited the simulated gun to the crimes of armed robbery.

We affirm.

HOWARD and FERNANDEZ, JJ., concur.