806 P.2d 1381

**STATE of Arizona, Appellee,**

v.

**Johnny Frank BUGGS, Appellant.**

**No. 1 CA–CR 88–1185.**

Court of Appeals of Arizona, Division 1, Department C.

Dec. 4, 1990.

Reconsideration Denied Jan. 28, 1991.

---

Robert K. Corbin, Atty. Gen. by Ronald L. Crismon, Acting Chief Counsel, Crim. Div., and Mark E. Dwyer, Asst. Atty. Gen., Phoenix, for appellee.

John C. Williams, Prescott, for appellant.

## OPINION

KLEINSCHMIDT, Judge.

The defendant, Johnny Frank Buggs, was convicted upon a trial by jury of aggravated assault. He was sentenced to a maximum term of imprisonment of twenty years. Although the trial court gave an improper instruction on self-defense, we affirm because in our opinion the evidence does not justify the giving of a self-defense instruction at all.

The defendant's version of the facts is as follows. The defendant became involved in a fight with two women, Shirley Hall and Verna Brown, in a pool hall in a neighborhood notorious for the prevalence of illegal drugs. The fight spilled outside to the parking lot, and the defendant tripped over a cement curb. When the defendant fell down, three men with whom he had had a prior "incident" began kicking him. While this was going on, one of the women the defendant had been fighting stabbed him in

the back. A friend of the defendant's grabbed him and picked him up.

The defendant went to the side of the building, and his friend put a pistol in his hand and told him to take care of himself. The defendant went back to the area in front of the pool hall where there were a number of people standing around. Two of the men who had assaulted the defendant were present. The defendant believed they were members of the Crips gang and assumed, because of their reputations, that they had firearms. The defendant also saw one of the women he had been fighting, Verna Brown, and she had a knife in her hand, although she did not then threaten him with it. The defendant was afraid of the men, and he fired his pistol at them. He missed the men but hit Verna Brown in the leg.

At various points in his testimony, the defendant elaborated on his fear of the Crips. When asked why he felt he was in danger when he returned to the parking lot, he said: "Because I know the Crips, I know what they do. You have to get them before they get you." He explained that when he was on the side of the building and his friend handed him the pistol, he returned to the front of the building because he was afraid that if he left the area by another route, he would be ambushed. He explained: "Well, see, I've been on the streets a long time, I have seen how the Crips act, I know what they do, and they get you in a position where you don't know no protection, they will wipe you."

When asked why he fired at the two men he said:

I guess if you haven't—well, you wouldn't understand it but once you get into it with one of them they going to retaliate on you, I don't know where you are at, they all pack, they all holding a gun. So, you want to stay alive the best thing to do is get them when you see them.

The defendant went on to explain that, because they had set upon him just shortly before, he believed that the two men were about to kill him.

The trial judge gave an instruction on self-defense which the state concedes was improper under the rulings in *State v. Hunter*, 142 Ariz. 88, 688 P.2d 980 (1984) and *State v. Garcia*, 152 Ariz. 245, 731 P.2d 610 (App.1986). The instruction failed to inform the jury that the state had the burden of proving beyond a reasonable doubt that the defendant did not act in self-defense.

■ The state argues that the error was harmless. It points out that in closing argument, defense counsel adequately informed the jury of the state's burden concerning self-defense, but it cites no authority for the proposition that this will cure fundamental error.

As far as we can discern from the record made available to us, the state never objected to the giving of a self-defense instruction and, indeed, does not suggest on appeal that the evidence was insufficient to justify a self-defense instruction. We nonetheless consider that question relevant to whether giving the wrong instruction was harmless error.

■ Under A.R.S. section 13–404(A), self-defense constitutes justification for conduct if: (1) a reasonable person would believe (2) that physical force is *immediately* necessary (3) to protect oneself against another's use or attempted use of unlawful physical force.

■ A defendant is entitled to an instruction on self-defense if there is the slightest evidence of justification for his act. *State v. Lujan*, 136 Ariz. 102, 104, 664 P.2d 646, 648 (1983); *State v. Martinez*, 122 Ariz. 596, 598, 596 P.2d 734, 736 (App.1979). The "slightest evidence" is that evidence which tends to prove a hostile demonstration which might be reasonably regarded as placing the accused in imminent danger of losing his life or sustaining great bodily harm. *State v. Walters*, 155 Ariz. 548, 553–54, 748 P.2d 777, 782–83 (App.1987); *State v. Wallace*, 83 Ariz. 220, 223, 319 P.2d 529, 531 (1957). Other Arizona cases have said that the defendant's burden with respect to self-defense extends no further than to raise a reasonable doubt

in the minds of the jury as to whether his act was justifiable. *E.g., State v. Garcia,* 114 Ariz. 317, 320, 560 P.2d 1224, 1227 (1977).

■ The aspect of this case which gives us concern is that, at the time the defendant shot in the direction of the Crips, they were not advancing upon or physically menacing him in any way. Characterized most strongly for the defendant, all that the evidence showed was that the defendant thought the men he shot at were highly dangerous individuals who meant to do him harm, and who he decided had to be eradicated right away to prevent them from gaining an advantage over him and injuring him at some later time. The question is, does this kind of threat justify the defendant's action? We believe it does not. The defendant's action was not immediately necessary to prevent the harm he feared.

The Arizona case most closely on point is *State v. Reid,* 155 Ariz. 399, 747 P.2d 560 (1987). There, the defendant shot and killed her father while he was asleep. The defendant testified that she feared her father because he had a long history of having abused her sexually and physically. She also said that she could detect a change in personality when one of the victim's fits of violence was approaching and, by inference, apparently believed that such a fit was imminent.

The defendant was convicted of murder and appealed. The state cross-appealed, claiming that the trial court erred in instructing the jury on self-defense. The supreme court agreed with the state, but indicated that in some circumstances knowledge of the victim's violent reputation *may* warrant a less restrictive definition of what is "immediately necessary" for self-defense than is usually applied. It noted the following language from a Kansas case, *State v. Hundley,* 236 Kan. 461, 467–68, 693 P.2d 475, 479 (1985):

'[I]mmediate,' in the instruction on self-defense places undue emphasis on the immediate action of the deceased, and obliterates the nature of the buildup of terror and fear which had been systematically created over a long period of time.

The Arizona Supreme Court then went on to say that even *if* it were to hold that a history of violence could be a factor in supporting a self-defense instruction, the facts in the case before it did not rise to that level.

Arizona is one of several states whose statutes relating to self-defense are couched in terms of the immediate need to use force. Most statutes speak in terms of allowing the use of force against the threat of imminent attack by another. W.R. LaFave & A.W. Scott, Jr., Substantive Criminal Law, § 5.7(d) (1986). This difference in terms and the structure of the statutes does not seem to result in any practical distinction in the application of the law. LaFave and Scott bring the problem into sharp focus with the following discussion:

As a general matter, the requirement that the attack reasonably appear to be imminent is a sensible one. If the threatened violence is scheduled to arrive in the more distant future, there may be avenues open to the defendant to prevent it other than to kill or injure the prospective attacker; but this is not so where the attack is imminent. But the application of this requirement in some contexts has been questioned. 'Suppose A kidnaps and confines D with the announced intention of killing him one week later. D has an opportunity to kill A and escape each morning as A brings him his daily ration. Taken literally, the *imminent* requirement would prevent D from using deadly force in self-defense until A is standing over him with a knife, but that outcome seems inappropriate. * * * The proper inquiry is not the immediacy of the threat but the immediacy of the response necessary in defense. If a threatened harm is such that it cannot be avoided if the intended victim waits until the last moment, the principle of self-defense must permit him to act earlier—as early as is required to defend himself effectively.'

*Id.* at 656 (quoting 2 P. Robinson, Criminal Law Defenses § 131(c)(1) (1984)).

The authors go on to acknowledge that a debate exists, usually discussed in the context of the battered wife, between those who urge that the "imminency" requirement be abolished or loosely construed and those who argue that it remain in place. At least one other commentator has recognized the same problem and has called for the courts to address it squarely. LaFond, *The Case for Liberalizing the Use of Deadly Force in Self–Defense,* 6 U. Puget Sound L.Rev. 237 (1983).

We have not found any case that would allow a claim of self-defense under the circumstances presented here. While we agree that a victim's past acts and reputation for violence will often be relevant on the question of the reasonableness of a defendant's use of force in self-defense, it would be inappropriate in a case such as this to dispense with or dilute the requirement that one may resort to deadly force only if it is necessary to prevent immediate harm. The defendant's "self-defense" in this case was nothing other than a "preemptive strike" against the men he feared. While there may be some circumstances imaginable that would allow for a defense based on that concept, this case does not present them. This case, for instance, does not present the same dire need as does the example used by LaFave and Scott of the kidnapper who plans to kill his victim in a week. Here, when the defendant returned to the area of the confrontation and fired his pistol at the men who had kicked him, he was not under their domination and control, and they gave no signal that they intended to renew their attack. Our conclusion is in line with settled authority to the effect that after a fight has broken off, one cannot pursue and kill merely because he once feared for his life. *See State v. Powers,* 117 Ariz. 220, 227, 571 P.2d 1016, 1023 (1977).

Since the defendant was not entitled to an instruction on self-defense, the flawed instruction was harmless beyond a reasonable doubt. *See State v. Rhymes,* 129 Ariz. 56, 59–60, 628 P.2d 939, 942–43 (1981). While it is conceivable that an erroneous instruction not otherwise supported by the evidence could, in some circumstances, so skew the presentation of a case as to call for a reversal, this is not that case.

We have been reluctant to rest this decision on an issue which has not been briefed. The defendant is, however, free to file a Motion for Reconsideration to address the law we have discussed, and the state is free to respond.

This court has, pursuant to A.R.S. section 13–4035, fully reviewed the record for fundamental error as we are obliged to do under this procedure. After reviewing the record we find that no reversible error was committed in these proceedings.

It is ordered affirming the conviction and sentence imposed.

TAYLOR, P.J., and EUBANK, J., concur.