4 P.3d 984

**In re ROY L.**

**No. 1 CA–JV 99–0097.**

Court of Appeals of Arizona, Division 1, Department D.

Jan. 13, 2000.

As Amended Feb. 3, 2000.

Law Office of A. Douglas LaSota, P.C. by A. Douglas LaSota, Phoenix, Attorney for Appellant.

Richard M. Romley, Maricopa County Attorney by Rene Williams, Deputy County Attorney, Phoenix, Attorneys for Appellee.

## OPINION

GERBER, Judge.

¶1 The juvenile, Roy L., appeals from denials of his motions to suppress and for judgment of acquittal and from his adjudication as a delinquent. For the reasons set forth, we affirm. We publish this decision for guidance in dealing with guns on or near school property.

### FACTS AND PROCEDURAL HISTORY

¶2 At approximately 9:00 A.M. on April 16, 1999, Phoenix Police Officer Randall Goins, a resource officer at Alhambra High School, received a radio transmission from a school security guard that an Alhambra student, then at a market across the street from the school, had been showing a gun to several students. The security guard had obtained this information from another student earlier that morning. Goins met with the security guard on the east side of the campus, where the guard pointed out this juvenile as the suspect with the firearm. The juvenile was then standing on a corner in front of the market. Goins retrieved binocu-

lars from his car and identified the juvenile as an Alhambra High School student.

¶ 3 Goins then got in his patrol car and drove to the market, keeping the juvenile in sight. As he approached the market, the juvenile began to walk around the north side of the market. The officer then drove around to the north side of the market, and the juvenile started going back towards its west side at a hurried pace. The officer noticed that the juvenile was a Hispanic male teenager wearing baggy white pants and an untucked blue shirt. He could not see a firearm.

¶ 4 Goins got out of his patrol car, pointed at the juvenile and yelled, "Hey you." He drew his gun and, standing sideways from the juvenile, held it at his side behind his leg where the juvenile could not see it. The officer asked the juvenile to come over to his patrol car and talk to him. The juvenile walked towards Goins with his hands on his head. The officer asked, "Do you have a gun?" to which the juvenile responded, "Yeah."

¶ 5 Goins then brought his gun to "low-ready" position, approached the juvenile, and asked him to place his hands on the patrol car, which he did. The officer patted down the juvenile's exterior clothing with his left hand and felt what he recognized to be the handle of a revolver-type weapon in the right front pants pocket. He asked, "Is this the gun?" to which the juvenile responded, "Yes, it is." Goins then lifted up the juvenile's shirt and saw a stainless steel six shot revolver protruding from his pocket. He removed the weapon, ensured that the juvenile had no other weapons, and placed him under arrest for carrying a concealed weapon. He asked the juvenile's age, and the juvenile responded that he was sixteen. After the arrest, Goins handcuffed him, put him into the patrol car, and drove him to his office at the school, where he read him the juvenile *Miranda* rights, which the juvenile indicated he understood. He declined to have his parents present during questioning.

¶ 6 The juvenile told the officer that he had taken the gun from his father's truck that morning because he had been threatened at gunpoint by a rival gang member the day

before. The juvenile admitted that he knew it was against the law to carry the gun and that he had not seen the gang member who had threatened him. He was charged with being a minor in possession of a firearm in violation of Arizona Revised Statutes Annotated ("A.R.S.") section 13–3111 (Supp.1998), a class 6 felony, and misconduct involving weapons in violation of A.R.S. section 13–3102 (Supp.1998), a class 1 misdemeanor. The second count was dismissed at the adjudication hearing. He filed a motion to suppress all direct and indirect evidence resulting from his stop, search and arrest, and all statements obtained in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The court denied the motion to suppress and later denied the juvenile's motion for judgment of acquittal and found him delinquent with regard to the possession of a firearm count, for which he was committed to the Arizona Department of Juvenile Corrections. He filed a timely appeal.

### DISCUSSION

#### A. Denial of the Motion to Suppress

■■■ ¶ 7 A trial court's ruling on a motion to suppress will be reversed only for clear and manifest error. *See Maricopa County Juvenile Action No. JT30243*, 186 Ariz. 213, 216, 920 P.2d 779, 782 (App.1996). We view the facts in a light most favorable to sustaining the trial court's ruling. *See State v. Smith*, 136 Ariz. 273, 275, 665 P.2d 995, 997 (1983). We review *de novo* the court's ultimate legal determinations such as whether police had a reasonable suspicion of criminal activity that justified an investigatory stop and whether the stop constituted a de facto arrest. *See, e.g., State v. Rogers*, 186 Ariz. 508, 510, 924 P.2d 1027, 1029 (1996).

■■ ¶ 8 A police officer with a reasonable and articulable suspicion that a person is involved in criminal activity may make a limited investigative stop. *See Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). "[T]he police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intru-

sion." *Id.* The United States Supreme Court explained in *Adams v. Williams:*

> A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time.

407 U.S. 143, 146, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972).

¶ 9 The juvenile argues that the investigatory stop here was an unreasonable seizure under the Fourth Amendment because Goins lacked reasonable suspicion of any criminal activity. He claims that hearsay from an unidentified student is insufficient to justify a *Terry* stop. No precise definition exists for "reasonable suspicion." Rather, the standard requires the "totality of the circumstances—the whole picture—[to] be taken into account." *United States v. Cortez,* 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). Our supreme court has stated:

> Articulating precisely what "reasonable suspicion" . . . mean[s] is not possible. [It is a] commonsense, nontechnical concept[ ] that deal[s] with the "factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act."

*State v. Rogers,* 186 Ariz. at 511, 924 P.2d at 1030 (quoting *Ornelas v. United States,* 517 U.S. 690, 695, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)).

¶ 10 Here, Goins received information from the school security guard that the juvenile had a gun in his possession. The security guard had been told that the juvenile had been showing the gun to others, and the guard was able to point the juvenile out to the officer. A tip from an informant can provide an adequate basis for a stop. *See Adams v. Williams,* 407 U.S. at 146, 92 S.Ct. 1921. Here, the tipster was not simply an anonymous telephone informant but a fellow student who had personally given the information about the juvenile to the guard.

¶ 11 Because the juvenile was wearing baggy clothes and an untucked shirt, Goins was unable to discern by looking at him whether he had a gun. When the officer drove to the market, the juvenile seemed to be trying to avoid him. These facts, together with the unidentified student's statement to the security guard, gave Goins reasonable suspicion to stop the juvenile and inquire. The juvenile court properly concluded that the stop was justified under *Terry.* "The standard for determining the validity of a *Terry* stop is whether 'a reasonably prudent [person] in the circumstances would be warranted in the belief that his safety or that of others was in danger.'" *State v. Blackmore,* 186 Ariz. 630, 633, 925 P.2d 1347, 1350 (1996) (quoting *Terry,* 392 U.S. at 27, 88 S.Ct. 1868).

¶ 12 We disagree with the juvenile's argument that the stop exceeded the scope of a permissible *Terry* stop and became an illegal de facto arrest because Goins drew his weapon. "Police are permitted to draw their weapons when they have reasonable basis to fear for their safety; by doing so, they do not convert an investigative stop into an arrest." *State v. Saez,* 173 Ariz. 624, 627, 845 P.2d 1119, 1122 (App.1992). Here, the officer had information that the juvenile possessed a firearm. Nevertheless, he never pointed his weapon at the juvenile before the juvenile admitted having a gun. After that point, the officer moved his gun into a "low-ready" position. After the juvenile's admission, Goins had probable cause to arrest him for possession of a firearm.

¶ 13 The juvenile also contends that the trial court erred in failing to suppress his statement that he had a gun on his person, which was made in response to Goins' questioning prior to the *Miranda* warnings. Police officers are required to administer *Miranda* warnings prior to conducting "custodial interrogation." *Miranda,* 384 U.S. at 444, 86 S.Ct. 1602. "Custodial interrogation" in Arizona occurs "when police have both reasonable grounds to believe that a crime has been committed and reasonable grounds to believe that the person they are questioning is the one who committed it." *State v. Pettit,* 194 Ariz. 192, 195 ¶ 15, 979 P.2d 5, 8 ¶ 15 (App.1998).

¶ 14 Although Goins had the requisite reasonable suspicion to stop the juvenile, he did

not know that the juvenile was committing the crime of possession of a firearm until after he admitted that he was carrying a gun. The officer's question as to whether he had a gun was therefore part of the investigation or determination as to whether a crime was being committed and so did not require a prior *Miranda* warning. *See State v. Tellez,* 6 Ariz.App. 251, 256, 431 P.2d 691, 696 (1967) (officer's questioning of motorist who had been weaving in traffic was not custodial interrogation requiring prior *Miranda* warnings, because, although defendant suspected of something due to his physical condition, officers did not yet know what crime had been committed and questioning occurred in public street beside defendant's companions).

 ¶ 15 The officer's question also fits within the public safety exception to the requirement that the police give *Miranda* warnings to a person in custody prior to interrogation. Voluntary responses to "questions necessary to secure [the officer's] own safety or the safety of the public" may be admitted in court despite the lack of *Miranda* warnings. *New York v. Quarles,* 467 U.S. 649, 659, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984). *Miranda* need not "be applied in all its rigor to a situation in which police officers ask questions reasonably prompted by a concern for the public safety." *Id.* at 656, 104 S.Ct. 2626. Given the fact that Goins had reason to believe that the juvenile, then in a public place just across from the high school, possessed a firearm, the question also falls within the public safety exception. *See State v. Ramirez,* 178 Ariz. 116, 124, 871 P.2d 237, 245 (1994).

 ¶ 16 Goins' frisk of the juvenile after he admitted possessing the firearm was also proper. "Under *Terry,* an officer may lawfully frisk a person for weapons if the officer reasonably suspects that an individual may be armed and presently dangerous to the officer or others." *In re Steven O.,* 188 Ariz. 28, 31, 932 P.2d 293, 296 (App.1997). The officer need not be absolutely certain that the individual is armed. Instead, "the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry,* 392 U.S. at 27, 88 S.Ct.

1868. Here the warrant for the frisk is even stronger. After the juvenile admitted that he was carrying a concealed weapon, Goins was well justified in believing that his safety or that of others was in danger, thus further warranting the frisk. Once the frisk produced the weapon, the officer was justified in reaching into his pocket and retrieving it. *See Smith,* 136 Ariz. at 276, 665 P.2d at 998. The trial court therefore properly denied the juvenile's motion to suppress all evidence and statements obtained by Goins.

*2. Denial of the Motion for Judgment of Acquittal*

 ¶ 17 The juvenile also argues that the trial court erred in denying his motion for judgment of acquittal. He claims that the State failed to prove beyond a reasonable doubt all the elements of the crime charged. The juvenile was charged with violation of A.R.S. section 13–3111(A), possession of a firearm by a minor. "Firearm" is defined in A.R.S. section 13–105(17) (Supp.1998) as "any loaded or unloaded handgun, pistol, revolver, rifle, shotgun or other weapon which will or is designed to or may readily be converted to expel a projectile by the action of expanding gases, except that it does not include a firearm in permanently inoperable condition."

¶ 18 The State never admitted into evidence the juvenile's gun. Neither party elicited any evidence regarding its operability. The juvenile now contends that the State had to prove beyond a reasonable doubt that the gun was not permanently inoperable at the time it was removed from him. However, in *State v. Rosthenhausler,* 147 Ariz. 486, 490–93, 711 P.2d 625, 629–32 (App.1985), Division Two of this court concluded that the State is not required to prove operability of the firearm as an element of the offense of aggravated assault premised on a firearm. The court stated that it did not believe "that by 'excepting' from the definition of 'firearm' weapons which are in a permanently inoperable condition, the legislature intended that the state be required to prove the non-existence of the exception." *Id.* at 493, 711 P.2d at 632. Rather, the burden remains on the defendant to "come forward with evidence establishing a 'reasonable doubt' as to the operability of

the firearm." *Id.* Both this division and our supreme court have endorsed this holding. *See State v. Valles,* 162 Ariz. 1, 7, 780 P.2d 1049, 1055 (1989); *State v. Berryman,* 178 Ariz. 617, 621, 875 P.2d 850, 854 (App.1994). The juvenile presented no evidence at all regarding the operability of the weapon. The State was therefore not required to prove the non-existence of this exception. *See Berryman,* 178 Ariz. at 621, 875 P.2d at 854.

■ ¶ 19 Similar reasoning governs the juvenile's claim that the State was required to prove the non-existence of the other exceptions to the firearm statute in A.R.S. section 13–3111(B). By excepting such activities as lawful hunting or shooting events, the legislature surely did not intend that failure to engage in such activities be an element of the offense. *See, e.g., Berryman,* 178 Ariz. at 621, 875 P.2d at 854 (by excepting certain registered firearms from the definition of prohibited weapons in misconduct involving weapons statute, the legislature did not intend to create non-registration as a element of the offense). In any event, the juvenile testified that he was carrying the gun to protect himself from the rival gang member, not for hunting or a shooting event.

■ ¶ 20 The juvenile also argues that the State failed to prove guilt beyond a reasonable doubt when it offered no evidence that the crime took place in a county with a population in excess of 500,000 persons. Under A.R.S. sections 13–3111(H) and (A),[1] the gun prohibition "applies only in counties with populations of more than five hundred thousand persons according to the most recent decennial census." Although the State presented evidence that the crime occurred in Maricopa County, it presented no evidence about its population. The members of this court work in Maricopa County, not on Mount Olympus. We may take judicial notice of a fact "so notoriously true as to not be subject to reasonable dispute." *In re Anthony H.,* 196 Ariz. 200, 201, 994 P.2d 407, 408 (App.1999) (quoting *State v. Lynch,* 115 Ariz. 19, 22, 562 P.2d 1386, 1389 (App.1977)). We

recently held that "it is common knowledge, not open to dispute, that Maricopa County's population has exceeded 500,000 persons for many years" and that it was appropriate for a trial court to take judicial notice of such fact without any particular documentation. *Id.* at 202, 994 P.2d at 409. Although the trial court failed to take judicial notice of this fact before the State rested, we can take notice of the fact at this time. *See State v. McGuire,* 124 Ariz. 64, 65, 601 P.2d 1348, 1349 (App.1978) (noting that appellate court can take judicial notice of any matter of which the trial court could take judicial notice, even where the trial court was never asked to do so).

■ ¶ 21 Finally, the juvenile contends that the trial court erred in denying his motion for judgment of acquittal because of uncontroverted evidence of a justification defense under A.R.S. section 13–401, that his life had been threatened the day before his arrest and that he was only carrying the weapon for self-defense. However, A.R.S. section 13–404 defines self-defense justification as follows:

> A. Except as provided in subsection B of this section, a person is justified in threatening or using physical force against another when and to the extent a reasonable person would believe that physical force *is immediately necessary* to protect himself against the other's use or attempted use of unlawful physical force.

A.R.S. § 13–404(A) (1989) (emphasis added).

¶ 22 The juvenile's statements as to why he was carrying the gun were insufficient to raise reasonable doubt as to whether his actions were justifiable because there was no evidence that the use of force was immediately necessary. *See State v. Buggs,* 167 Ariz. 333, 336, 806 P.2d 1381, 1384 (App.1990). The evidence was undisputed that the juvenile had not seen the rival gang member who had threatened him on the day of his arrest. Because the juvenile never raised self-defense, the State had no duty to rebut it.

---

1. On November 30, 1999, Division II of this court held this statute unconstitutional as special or local legislation. *In re Cesar R.,* 309 Ariz. Adv. Rep. 36, 197 Ariz. 437, 4 P.3d 980 (App. Nov. 30, 1999). The constitutionality of this statute is not before us in this case.

## CONCLUSION

¶ 23 The trial court did not err in denying the juvenile's motions to suppress and for judgment of acquittal. The adjudication of delinquency and disposition are affirmed.

CONCURRING: EDWARD C. VOSS, Presiding Judge, Department D, and JEFFERSON L. LANKFORD, Judge.