NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

STATE OF ARIZONA, *Appellee,*

*v.*

MAURICIO MORALES, *Appellant.*

No. 1 CA-CR 22-0159
FILED 2-14-2023

---

Appeal from the Superior Court in Maricopa County
No. CR2019-135157-001
The Honorable Scott S. Minder, Judge
The Honorable Michael W. Kemp, Judge
The Honorable Geoffrey H. Fish, Judge

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Deborah Celeste Kinney
*Counsel for Appellee*

Law Office of Stephen M. Johnson, Inc., Phoenix
By Stephen M. Johnson
*Counsel for Appellant*

## MEMORANDUM DECISION

Judge Michael S. Catlett delivered the decision of the Court, in which Presiding Judge Paul J. McMurdie and Judge Michael J. Brown joined.

**C A T L E T T**, Judge:

**¶1**         Mauricio Morales ("Morales") was convicted and sentenced for aggravated assault and misconduct involving weapons. Morales asserts one ground for reversal—the superior court should have suppressed statements Morales made in the absence of a *Miranda*[1] warning while being transported to a police station. Because Morales did not make those spontaneous statements during a custodial interrogation, and thus no *Miranda* warning was required, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

**¶2**         Ryan,[2] the owner of a 7-Eleven convenience store, was working in the store's back office when Morales suddenly burst in screaming, "where is she? Where is she?" The two men had never met before.

**¶3**         Morales then searched the entire store, claiming to be looking for someone. Unable to locate whatever he was searching for, Morales abruptly left and drove away in his truck. But Morales returned shortly thereafter. He entered the store a second time, bought merchandise, and left as if nothing happened. Rather than returning to his truck, Morales got into another customer's car, explaining to the (undoubtedly concerned) customer that Morales needed help looking for someone. The customer attempted to calm Morales, who then got out of her car.

**¶4**         Morales entered the store yet a third time, demanding that Ryan allow him to search Ryan's car. When Ryan refused, Morales returned to his own truck and retrieved a metal pipe. Morales told Ryan that if he did not "open the damn door," he would "smash the glass" and "mess up" Ryan's car. When Ryan refused, Morales threatened, "[I]f you

---

[1]     *Miranda v. Arizona*, 384 U.S. 436 (1966).

[2]     We use pseudonyms to protect victim privacy. *See generally* Ariz. R. Crim. P. 31.10(f); Ariz. Ct. App., Div. 1, Admin. Order No. 2013-1.

don't open it, I'm going to mess you up." Desiring to avoid further escalation, Ryan allowed Morales to search Ryan's car. Finding nothing, Morales raised the pipe and made a "flinching action" toward Ryan. Ryan fled back into the store and held the door closed. Morales tried to pry the door open, yelling that he needed to find someone. A police officer eventually arrived and arrested Morales.

¶5　　　　While being transported to the police station, Morales told the officer they "needed to go back to his truck to get his handgun" located inside a shoebox in the bed of his truck. The officer returned to the store's parking lot and found the handgun, along with ammunition, in the exact location Morales provided.

¶6　　　　The State charged Morales with one count each of aggravated assault and misconduct involving weapons. Before trial on both charges, Morales moved to suppress his statements regarding the handgun, and any evidence derived therefrom. He contended the statements and evidence were obtained during custodial interrogation without a *Miranda* warning, in violation of his constitutional rights. The State opposed the motion, arguing Morales's statements regarding the handgun were voluntary and spontaneous and did not occur during a custodial interrogation.

¶7　　　　The superior court conducted a suppression hearing, during which the court heard testimony from the officer who retrieved the handgun and admitted the officer's body-worn camera footage. According to the evidence, the officer never provided a *Miranda* warning. The officer questioned Morales about the assault following his arrest for that charge. Upon completing the assault investigation, the officer turned off his body-worn camera and began transporting Morales to the police station. The officer testified that all questioning had ceased at that point. On the way to the station, Morales, without prompting, told the officer to go back and "get his handgun which he had left in the back of the truck." Morales then provided the specific location of the handgun, either voluntarily or through follow-up questioning by the officer. With this information, the officer found the handgun in the bed of Morales's truck. The officer testified that he did not know Morales was a prohibited possessor and seized the handgun based solely on public safety concerns.

¶8　　　　The superior court denied the motion to suppress, finding that (1) the officer's interrogation ended when he began transporting Morales from the store; (2) Morales's unprompted statements were not the result of an interrogation; (3) the officer did not know about Morales's prohibited possessor status at the time; (4) any follow-up questions were

3

necessary to secure a handgun located in an open, publicly accessible area; and (5) the evidence did not support that the officer engaged in intentional misconduct.

**¶9** At Morales's request, the superior court severed the charges for trial. The superior court conducted a jury trial on the aggravated assault charge and a bench trial on the misconduct involving weapons charge. At the jury trial on the aggravated assault charge, the State did not present Morales's statements or evidence related to the handgun. During the bench trial, however, the State offered, and the superior court admitted, Morales's statements and evidence related to the handgun. The jury and the superior court, respectively, both found Morales guilty.

**¶10** The superior court sentenced Morales to concurrent presumptive terms totaling 11.25 years' imprisonment. Morales timely appealed. We have jurisdiction under A.R.S. §§ 12-120.21(A)(1), 13-4031, and -4033(A)(1).

## DISCUSSION

**¶11** The sole issue presented is whether the superior court abused its discretion in refusing to suppress the statements and evidence about the handgun. We review the superior court's denial of a motion to suppress for an abuse of discretion, but we review any legal conclusions *de novo*. *State v. Rosengren*, 199 Ariz. 112, 115–16 ¶ 9 (App. 2000). We view the facts in the light most favorable to sustaining the superior court's ruling, considering only the evidence admitted during the suppression hearing. *State v. Manuel*, 229 Ariz. 1, 4 ¶ 11 (2011). We defer to the superior court's factual findings, including its findings as to officer credibility. *State v. Gonzalez-Gutierrez*, 187 Ariz. 116, 118 (1996).

**¶12** Morales asserts that the superior court misapplied *Miranda* and its progeny, and that the statements he made about the handgun were the product of a "continuous" custodial interrogation without a required *Miranda* warning. The State concedes that Morales was in custody during the relevant period but argues that the unprompted statements regarding the handgun were not the result of a custodial interrogation. The State also contends that any follow-up questioning fell within the public-safety exception.

**¶13** We agree with the State. *Miranda*'s prophylactic procedural protections apply only during a custodial interrogation. 384 U.S. at 444. Such an interrogation occurs when police engage in express questioning or the "functional equivalent." *Rhode Island v. Innis*, 446 U.S. 291, 300–01

4

(1980). But if a suspect voluntarily initiates a conversation, a custodial interrogation does not result, and *Miranda* does not apply. *State v. Mauro*, 159 Ariz. 186, 192 (1988). So, for example, spontaneous statements not made in response to an interrogation do not implicate *Miranda*. *State v. Carter*, 145 Ariz. 101, 106 (1985).

**¶14** There is also a public-safety exception to *Miranda*, which applies when police inquiries are "motivated by public safety concerns and were not designed to obtain evidence of a crime." *State v. Ramirez*, 78 Ariz. 116, 124 (1994). A suspect's voluntary response to necessary questions to ensure the public's safety is admissible, even without a *Miranda* warning. *In re Roy L.*, 197 Ariz. 441, 446 ¶ 15 (App. 2000) (citing *New York v. Quarles*, 467 U.S. 649, 659 (1984)).

**¶15** The superior court did not abuse its discretion in denying Morales's motion to suppress. Although the parties agree that Morales did not receive a *Miranda* warning, his statements regarding the handgun were not made during a custodial interrogation. Instead, Morales volunteered information about the handgun to secure the weapon following his arrest. The officer testified that all questioning had ceased when Morales made the statements, and the officer had no knowledge of Morales's prohibited possessor status at the time of the statements. Morales did not establish that his unilateral statement informing the transporting officer about the existence and location of the handgun was obtained in violation of *Miranda*.

**¶16** The officer's subsequent questions fall within the public-safety exception to *Miranda*. In following up on Morales's unprompted statement about the handgun, the record supports that the officer intended only to secure a publicly accessible handgun. If any follow-up questioning occurred, the questions were designed to locate that weapon in Morales's truck bed. The record reflects that the transporting officer did not know Morales was a prohibited possessor at the time of questioning. Follow-up questions about the handgun, therefore, fall under the public-safety exception to *Miranda*. *See id.* (applying the public-safety exception to post-arrest questions about gun possession).

**¶17** Morales's contention that the officer obtained the statements as part of a "continuous" interrogation is similarly unavailing. Evidence must be suppressed as "fruit of the poisonous tree" if gained through the exploitation of a previous constitutional violation. *State v. Schinzel*, 202 Ariz. 375, 382 ¶ 28 (App. 2002). The inquiry turns on whether the evidence was seized "by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Wong Sun*

*v. United States*, 371 U.S. 471, 488 (1963). Even if a suspect has caused a custodial interrogation to end (by, for example, invoking the right to counsel), once a "suspect reinitiates contact with the police, he waives his rights and questioning can continue." *State v. Smith*, 193 Ariz. 452, 458 ¶ 22 (1999).

**¶18** Believing the investigation of the assault complete, all on-scene questioning of Morales ceased and the officer began transporting Morales to the police station. Without provocation, Morales reinitiated contact and informed the officer of the location of the handgun. By simply listening and then following up to retrieve a publicly accessible handgun, the officer did not exploit any purported illegality that may have previously occurred at the convenience store. Again, Morales's statements did not pertain to the assault and the officer did not know that Morales was a prohibited possessor (and thus that Morales's statements could be self-incriminating). The evidence regarding the handgun was obtained by means sufficiently distinguishable from any prior *Miranda* violation; that evidence was, therefore, legally acquired.

**CONCLUSION**

**¶19** We affirm Morales's convictions and resulting sentences.



AMY M. WOOD • Clerk of the Court
FILED:   AA