780 P.2d 1049

**STATE of Arizona, Appellee,**

v.

**Richard Lino VALLES, Appellant.**

**No. CR–87–0316–AP.**

Supreme Court of Arizona,
En Banc.

Sept. 21, 1989.

Robert K. Corbin, Atty. Gen., by Jessica Gifford–Funkhouser and Joseph T. Maziarz, Asst. Attys. Gen., Phoenix, for appellee.

Dean W. Trebesch, Maricopa County Public Defender, John W. Rood, III, Maricopa County Deputy Public Defender and John M. Antieau, Phoenix, for appellant.

GORDON, Chief Justice.

## JURISDICTION

The jury convicted defendant, Richard Lino Valles, of attempted armed robbery, aggravated assault, and two counts of kidnapping. The jury found each offense to be of a dangerous nature. The trial court found that defendant was on parole when these offenses occurred. The trial court sentenced him to four concurrent life sentences pursuant to A.R.S. § 13–604.02(A). The trial court credited defendant with 325 days' presentence incarceration and ordered a $100 felony assessment payment on each count. We have jurisdiction pursuant to article 6, § 5(3) of the Arizona Constitution and A.R.S. §§ 13–4031 and 13–4033.

## ISSUES

Did the trial court commit reversible error by admitting evidence of a prior robbery under similar circumstances involving the same victim-witness at the same location?

Did the aggravated assault and dangerousness jury instructions constitute reversible error when the instructions neither defined "deadly weapon" nor stated that use of a replica gun was insufficient to prove an aggravated assault?

## FACTS

On January 12, 1987, defendant attempted to rob the Miller's Outpost store at the

Tri–City Mall in Mesa, Arizona. Because of a prior robbery at that store on December 22, 1986, Detective Donald Byers was on an undercover stake-out, pretending to be a customer. A cashier was at the checkout at the front of the store, Kelly Hendrickson, the sales clerk, was working in the center of the store, and Greg Meeker, the manager, was in the back of the store.

Byers watched as defendant entered the store, put gauze in his mouth, took a shirt off the rack and draped it over his arm. Defendant approached Hendrickson and asked to see the manager. Recognizing defendant as the same man who robbed the store three weeks earlier, Hendrickson turned away, but defendant called her back. She saw a gun barrel sticking out from under the draped shirt and immediately obeyed. Defendant followed as Hendrickson walked to the back of the store to Greg Meeker. Defendant lifted the shirt, showed Meeker the gun and ordered him to the back room to open the safe.

Byers quickly told the cashier to call 911 and report a robbery in progress. Drawing his gun, Byers hurried to the back room. He confronted defendant, identified himself as a police officer, and ordered defendant to drop his gun. Defendant froze. Suddenly, Meeker lunged for defendant's gun and attempted to wrestle it free. They scuffled until defendant pointed his gun at Hendrickson and threatened to shoot her if Meeker did not back off. Meeker let go. Defendant grabbed Meeker and held the gun to his head. Using Meeker as a shield, defendant headed for the rear door. As they approached the exit, Meeker dropped to the floor and defendant bolted out the door. Defendant fled down the sidewalk and back into the mall. Byers chased him, but lost him in the crowd.

A patrol car responding to the 911 call saw defendant run to a car and speed out of the parking lot. Suddenly, defendant braked, skidded, and drove directly into the patrol car, forcing the officer to lose control and swerve into a pole. Defendant sped away. Various witnesses described defendant and the vehicle, but stated that the license number was blacked out.

About two weeks later, detectives from the Mesa Police Department observed defendant driving a vehicle matching the descriptions from the robbery. They followed, but defendant accelerated away. The chase continued until defendant swerved his vehicle around and drove head-on towards the detectives. Again, defendant escaped, but further investigation determined that the vehicle was registered to defendant's girlfriend. Police conducted a stake-out at her residence and confronted defendant there later that day. He fled on foot, but, finally, police captured and arrested him. Police never recovered the gun used in the robbery attempt.

## PROCEDURAL HISTORY

The trial court denied defendant's motion in limine to preclude testimony about the prior robbery in December. Kelly Hendrickson, Greg Meeker, and Detective Byers testified at the *Dessureault* hearing and each unequivocally identified defendant as the same person who attempted robbery on January 12, 1987. *See State v. Dessureault*, 104 Ariz. 380, 453 P.2d 951 (1969), *cert. denied*, 397 U.S. 965, 90 S.Ct. 1000, 25 L.Ed.2d 257 (1970). Hendrickson further identified defendant as the man who committed the December 22, 1986, robbery, but stated that she could not be 100% sure. At trial, all three eyewitnesses unequivocally identified the defendant as the man who committed the January 12 robbery, and the trial judge admitted the following testimony concerning the December 22 robbery:

A. [Hendrickson]: [I] recognized him from the description of the first robbery

. . .

Q. [Prosecutor]: Now, the man that approached you, is he in the courtroom today?

A. [Hendrickson]: Yes, he is.

Q. [Prosecutor]: Would you please point him out and describe what he is wearing?

A. [Hendrickson]: He is right there in a white shirt and a red and blue tie.

4

MR. SANDLER: Your Honor, may the record reflect the identification of the defendant.

THE COURT: The record may reflect the identification of the defendant by the witness.

\*    \*    \*    \*    \*    \*

Q. [Prosecutor]: Were you present during that [December 22] robbery?

A. [Hendrickson]: Yes, I was.

Q. [Prosecutor]: Did you see the individual who robbed the store that time?

A. [Hendrickson]: I had gotten a few glances at him.

Q. [Prosecutor]: Is it the same person that came in the store on the 12th?

A. [Hendrickson]: I assume that it is. He had the same build, same characteristics.

\*    \*    \*    \*    \*    \*

A. [Hendrickson]: After he approached me and asked me for my manager, at that point I did feel that I recognized him and knew that he was the same man.

Following testimony of the three eyewitnesses at trial, the trial judge denied defendant's motion for a directed verdict. Defendant asserted a mistaken identity defense and did not object to the jury instructions given. The dangerousness instruction defined "dangerous instrument," but failed to define "deadly weapon." The aggravated assault instruction required a finding that defendant used a gun. It did not advise the jury that use of a simulated or replica gun would be insufficient for an aggravated assault conviction.

The jury found defendant guilty on all four counts and found each to be of a dangerous nature. The trial court found that defendant was on parole at the time of the crime and sentenced him to four concurrent life sentences. After the verdicts, defendant filed a motion for new trial alleging that the trial court erred by admitting evidence of the December robbery and that the finding of dangerousness was contrary to the evidence. The trial court denied the motion and defendant timely appealed.

## THE PRIOR ROBBERY

Defendant claims that the trial court erred by admitting evidence of the December 22, 1986, robbery. Kelly Hendrickson witnessed both robberies, and although less certain of her identification of defendant in the December robbery, she was positive of his identity in the January 12, 1987, robbery. Defendant relied on a mistaken identity defense. The state offered evidence of the first robbery to reinforce the accuracy of her identification in the second robbery. We believe the evidence of the prior robbery was admissible under the identity exception of Rule 404(b), Arizona Rules of Evidence.

■   Generally, evidence of prior bad acts or other crimes is inadmissible to prove defendant's bad character or actions in conformity with that character. However, Rule 404(b) of the Arizona Rules of Evidence provides for certain exceptions:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, *identity*, or absence of mistake or accident.

(Emphasis added.) *See generally* M. Udall & J. Livermore, *Arizona Law of Evidence* § 84 (2nd ed. 1982).

This Court held that evidence of police officer's prior undercover drug transaction with the defendant was admissible to prove the accuracy of the officer's identification when a defendant asserted a mistaken identity defense in a subsequent drug prosecution. *State v. Padilla*, 122 Ariz. 378, 379, 595 P.2d 170, 171 (1979). In another case, this Court admitted eyewitness testimony from three prior Circle K robberies in a prosecution for murder and armed robbery of a Low Cost Market, a convenience store similar to a Circle K. When the defendant asserted a mistaken identity defense, the court properly admitted the evidence to verify the witnesses' pretrial and in-court identifications. *State v. Smith*, 146 Ariz. 491, 499, 707 P.2d 289, 297 (1985).

■ However, in order for a prior crime to be admissible under the identity exception, the *modus operandi* and circumstances of the two crimes must be sufficiently similar. *State v. Brown*, 125 Ariz. 160, 161, 608 P.2d 299, 300 (1980) (in a prosecution for robbery of two bowling alleys, the Court admitted evidence of a prior bowling alley robbery where all three robberies involved "casing" of the lanes while using the pinball machines, using a bowling bag to conceal the weapon and carry the stolen cash, and failing to conceal identity). An unrelated bad act with a similar *modus operandi* may be admissible to identify defendant as the one who committed the crime for which he is being tried. *State v. Jackson*, 124 Ariz. 202, 204, 603 P.2d 94, 96 (1979) (rape and burglary prosecution, admission of unrelated similar incident where defendant entered woman's apartment held harmless error). The similarities between the offenses must be in those important aspects where differences normally would be expected. *Id.*

■ Both the December 22, 1986, robbery and the January 12, 1987, robbery occurred at the same Miller's Outpost store at the Tri–City Mall in Mesa. In both robberies, the defendant stuffed something in his cheeks to distort his appearance. In each case, the defendant carried a gun. The December 22, 1986, robbery occurred at about 4:50 in the afternoon. The January 12, 1987, robbery took place at 5:30 p.m., twenty-one days later. Each time, the defendant concealed the gun under clothing draped over his arm and demanded money from the safe in the back room. Kelly Hendrickson recognized defendant from the prior robbery when he approached her during the January 12, 1987, robbery. Although she was less certain of her identification after the December 22, 1986, robbery, she was positive of his identity in the second robbery.

Considering the many similarities between the two offenses, a jury could fairly infer that the person who committed the first offense was the person who committed the second. *State v. Roscoe*, 145 Ariz. 212, 216–18, 700 P.2d 1312, 1316–18 (1984)

(in a murder prosecution, testimony of victim of defendant's prior assault with a deadly weapon was admissible to prove identity when *modus operandi* showed significant similarities between the two crimes). *See Colley v. Sumner*, 784 F.2d 984, 990 (9th Cir.1986) (evidence of a prior assault admissible in trial for second assault when crimes occurred at same location, time, and manner), *cert. denied*, 479 U.S. 839, 107 S.Ct. 142, 93 L.Ed.2d 84 (1986); *State v. Jones*, 26 Ariz.App. 66, 67, 546 P.2d 43, 44 (1976) (trial court did not abuse its discretion by admitting evidence of defendant's prior robberies of the same store where defendant committed the robberies in a similar manner and the same store clerk witnessed all the robberies: "[W]hen the identity of the perpetrator is in doubt, evidence of other crimes will be admitted if it has a logical tendency to show the identity of the defendant").

We believe the circumstances surrounding the two robberies at the Miller's Outpost store were significantly similar so as to render evidence of the prior robbery admissible under the identity exception of Rule 404(b) of the Arizona Rules of Evidence.

■ However, Arizona requires that before the trial court admits evidence of the separate crime, the evidence of that other crime must be substantial enough to take that case to the jury. The state is not required to prove evidence of the other crime beyond a reasonable doubt. *State v. Marahrens*, 114 Ariz. 304, 307, 560 P.2d 1211, 1214 (1977); *State v. Hughes*, 102 Ariz. 118, 123, 426 P.2d 386, 391 (1967). Based on the major similarities between the December 22, 1986, robbery and the January 12, 1987, robbery, a jury could reasonably find that defendant committed both crimes. The evidence of the December robbery was sufficient to take that case to the jury and was admissible to prove defendant's identity.

■ Even if admission of the prior robbery testimony was error, it was harmless. Considering the overwhelming evidence of three uncontradicted eyewitness identifications, it is not reasonably probable

**6**

that the verdict would have been any different absent evidence of the prior robbery. *State v. Grijalva*, 137 Ariz. 10, 14, 667 P.2d 1336, 1340 (1983). Furthermore, considering defendant's misidentification defense, the probative value of the prior robbery evidence outweighed any prejudice to the defendant. *See United States v. Buck*, 548 F.2d 871, 876 (9th Cir.1977) (if the testimony is probative on the crucial issue of identification any slight prejudicial element is clearly outweighed by the probative value), *cert. denied*, 434 U.S. 890, 98 S.Ct. 263, 54 L.Ed.2d 175 (1977). The trial court gave a limiting instruction on the jury's use of the prior robbery. We find no error.

■ The state also asserts that testimony concerning the prior robbery was admissible to complete the story of the crime. Although we recognize this ground for admissibility of prior bad act evidence, *State v. Mincey*, 141 Ariz. 425, 433–34, 687 P.2d 1180, 1188–89 (1984), *cert. denied*, 469 U.S. 1040, 105 S.Ct. 521, 83 L.Ed.2d 409 (1984); *State v. Chaney*, 141 Ariz. 295, 309, 686 P.2d 1265, 1279 (1984); we need not address that issue here because we find the evidence admissible under the identity exception.

## THE JURY INSTRUCTIONS

Defendant next asserts reversible error in the jury instructions on dangerousness and aggravated assault. The dangerousness instruction stated: "A dangerous crime is one involving the use of a deadly weapon or dangerous instrument." The judge defined dangerous instrument. Defendant did not request and the trial judge did not give a definition of deadly weapon. The aggravated assault instruction stated: "The crime of aggravated assault requires proof of the following two things: Defendant intentionally put another person in reasonable apprehension of immediate physical injury; and the defendant used a gun." Defendant did not request and the trial judge did not give an instruction that a replica gun or simulated gun was insufficient to support an aggravated assault conviction or a dangerousness finding.

■ Defendant waived any objection to these instructions by his failure to object at trial. Ariz.R.Crim.P. 21.3(c). Failure to object to a jury instruction below precludes defendant from claiming error on appeal unless the error is fundamental. *State v. Zaragoza*, 135 Ariz. 63, 66, 659 P.2d 22, 25 (1983), *cert. denied*, 462 U.S. 1124, 103 S.Ct. 3097, 77 L.Ed.2d 1356 (1983); *State v. Mincey*, 130 Ariz. 389, 396–97, 636 P.2d 637, 644–45 (1981), *cert. denied*, 455 U.S. 1003, 102 S.Ct. 1638, 71 L.Ed.2d 871 (1982). Error is fundamental only if it goes to the foundation of the case or deprives the defendant of a right essential to his defense. *State v. King*, 158 Ariz. 419, 424, 763 P.2d 239, 244 (1988); *State v. Barnett*, 142 Ariz. 592, 594, 691 P.2d 683, 685 (1984); *Mincey*, 130 Ariz. at 397, 636 P.2d at 645 (*quoting State v. Pulliam*, 87 Ariz. 216, 222, 349 P.2d 781, 785 (1960)); Defendant asserts that the omissions in the jury instructions constituted fundamental error. We disagree.

■ Generally, a court need not define every phrase or word used in the instructions given in a criminal prosecution. When the words are used in their ordinary sense and are commonly understood by those familiar with the English language, the court need not define those terms. *Barnett*, 142 Ariz. at 594, 691 P.2d at 685 (failure to define "intentionally" not fundamental error).

■ The statute defines "deadly weapon" as "anything designed for lethal use. The term includes a firearm." A.R.S. § 13–105(10). A common definition of deadly or deadly weapon is: "likely to cause or capable of producing death," *Webster's New Collegiate Dictionary* 290 (1973). Black's Law Dictionary defines "deadly weapon" as: "Any firearm, or other weapon, device, instrument, material or substance, whether animate or inanimate, which in the manner it is used or is intended to be used is known to be capable of producing death or serious bodily injury." *Black's Law Dictionary* 359 (5th ed. 1979). Because the statutory definition of deadly weapon and the common definition of deadly weapon are essentially the same, failure

to define deadly weapon for the jury did not constitute "error going to the foundation of the case" or "deny defendant a right essential to his defense." *Zaragoza,* 135 Ariz. at 66, 659 P.2d at 25 (failure to define "attempts" in jury instruction not fundamental error).

Defendant did not request an instruction nor did he object at trial to the omission of an instruction that a replica gun or simulated gun was insufficient to support an aggravated assault conviction or a finding of dangerousness. Absent reasonable doubt as to the operability of a firearm, the state has no burden to prove the gun was not permanently inoperable. *State v. Rosthenhausler,* 147 Ariz. 486, 490–493, 711 P.2d 625, 629–32 (Ct.App. 1985). Similarly, the state has no obligation to prove the gun was not a replica absent evidence sufficient to create a reasonable doubt as to its authenticity. *Id.*

Kelly Hendrickson testified that defendant's gun was either a revolver or automatic with a big barrel opening, metallic grayish color, and did not at all appear to be a toy gun. When defendant pointed the gun at her, she testified she was petrified and thought she was definitely going to be injured, hurt, or possibly killed. Greg Meeker described the gun as a pistol, bluish silver with a small, thin, barrel. Defendant pointed the gun at Meeker and threatened to shoot him. During their struggle for the gun, defendant also threatened to shoot Kelly if Meeker did not back off. Detective Byers described the gun as a light gray, graphite colored, small caliber revolver with a narrow barrel. Byers testified that defendant kept saying "Back off, man, or I'll shoot him."

Defendant disposed of the gun and police never found it. He offered no evidence that the gun was a replica. The only suggestion that the gun was other than a real gun was the witnesses' responses on cross examination that they could not be certain whether the gun was real or a replica.

Considering the testimony of the three eyewitnesses as well as defendant's conduct, we find ample evidence to support the jury's finding that defendant used a real gun and not a replica. *See State v. Jones,* 26 Ariz.App. 68, 72, 546 P.2d 45, 49 (1976) (sufficient evidence supported a finding that defendant used a real gun in the robbery when both clerks and a customer testified that they believed the gun was real). Under the circumstances, we find that the omission of a replica gun instruction was not reversible error.

We reviewed the entire record for fundamental error and found none. We affirm the sentences and convictions.

FELDMAN, V.C.J., and CAMERON and MOELLER, JJ., concur.

HOLOHAN, J., participated in this matter but retired prior to the filing of this opinion.

CORCORAN, J., did not participate in the determination of this matter.