NOTICE: NOT FOR PUBLICATION.
UNDER ARIZ. R. SUP. CT. 111(c), THIS DECISION DOES NOT CREATE LEGAL PRECEDENT
AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

JESSICA ANNE CRAFT, *Appellant.*

No. 1 CA-CR 12-0789
FILED 2-25-2014

Appeal from the Superior Court in Maricopa County
No. CR2012-130521-001 SE
The Honorable Joseph C. Welty, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Craig W. Soland
*Counsel for Appellee*

Maricopa County Legal Advocate's Office, Phoenix
By Frances J. Gray
*Counsel for Appellant*

------------------------

**MEMORANDUM DECISION**

Presiding Judge Andrew W. Gould delivered the decision of the Court, in which Judge Peter B. Swann and Judge Jon W. Thompson joined.

------------------------

**G O U L D,** Judge:

¶1        Jessica Anne Craft appeals her convictions for arson of a structure or property, attempted fraudulent schemes and artifices and possession of drug paraphernalia.  Craft argues the evidence was insufficient to support her convictions for arson and possession of drug paraphernalia as well as the jury's determination that the arson was a dangerous offense; the trial court failed to properly instruct the jury regarding arson and possession of drug paraphernalia; the trial court erred when it admitted various evidence; and that the prosecutor engaged in numerous instances of misconduct.  For the reasons below, we affirm Craft's convictions.

I.        Background

¶2        The State charged Craft with arson of a structure or property and attempted fraudulent schemes and artifices after Craft and/or an accomplice burned Craft's car and Craft filed a claim for the loss with her insurance company.  The State further charged Craft with possession of drug paraphernalia after a search incident to her arrest revealed a pipe of a type commonly used to smoke methamphetamine.  We discuss additional details of the offenses below.  A jury found Craft guilty as charged and the trial court sentenced her to an aggregate term of four years' imprisonment.  Craft now appeals.  We have jurisdiction pursuant to Arizona Constitution, Article 6, Section 9, and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A) (2003), 13-4031 (2010) and 13-4033 (2010).

II.       Sufficiency of the Evidence to Support the Conviction for Arson

¶3        Craft argues the evidence was insufficient to support her conviction for arson of a structure or property.  As charged in this case, a person commits arson of a structure or property if the person knowingly and unlawfully damages a structure or property by knowingly causing a fire or explosion.  A.R.S. § 13-1703(A) (2012).  The statutory definition of "structure" includes vehicles.  A.R.S. § 13-1701(4) (2012).  Craft does not

contest the sufficiency of the evidence that she and/or an accomplice knowingly damaged her car by knowingly causing a fire or explosion.

**¶4**         Craft argues, however, that evidence was insufficient to prove she did so "unlawfully." Craft contends that burning one's own car is not always "unlawful," and that "to be unlawful, the circumstance of the fire must violate a criminal statute." Craft argues that because she burned her own car in the middle of the night in the middle of a large, empty paved lot in an isolated area away from all structures, people and flammable material, she did not violate any criminal statute and the fire was, therefore, not "unlawful." She further argues her subsequent attempt to commit fraud did not retroactively convert the fire into "unlawful" arson.

**¶5**         "Reversible error based on insufficiency of the evidence occurs only where there is a complete absence of probative facts to support the conviction." *State v. Soto-Fong*, 187 Ariz. 186, 200, 928 P.2d 610, 624 (1996) (citation omitted). "To set aside a jury verdict for insufficient evidence, it must clearly appear that under no hypothesis whatever is there sufficient evidence to support the conclusion reached by the jury." *State v. Arredondo*, 155 Ariz. 314, 316, 746 P.2d 484, 486 (1987) (citation omitted).

**¶6**         "We construe the evidence in the light most favorable to sustaining the verdict, and resolve all reasonable inferences against the defendant." *State v. Greene*, 192 Ariz. 431, 436, ¶ 12, 967 P.2d 106, 111 (1998) (citation omitted). In our review of the record, we resolve any conflict in the evidence in favor of sustaining the verdict. *State v. Guerra*, 161 Ariz. 289, 293, 778 P.2d 1185, 1189 (1989). We do not weigh the evidence, however. That is the function of the jury. *See id.*

**¶7**         The evidence shows Craft and/or an accomplice destroyed Craft's car by burning it in the middle of an empty parking lot at Saguaro Lake shortly before 1:30 a.m. on the date of the incident. Craft contacted the sheriff's department and reported the vehicle was stolen while she was fishing at a nearby river with friends. She subsequently made a claim for the loss with her insurance company, again claiming the vehicle was stolen. Before the incident, however, Craft told a friend more than once it would be "a shame" if something happened to her car. She also discussed "torching" her car for insurance with another friend. After the incident, Craft admitted to friends she and her boyfriend burned her car and that she did so to get money from her insurance company.

¶8        This evidence was more than sufficient to permit the jury to find beyond a reasonable doubt that Craft and/or an accomplice burned her car "unlawfully."   Craft burned her car "pursuant to a scheme or artifice to defraud" her insurance company.  *See* A.R.S. § 13-2310(A) (2012) (defining felony offense of fraudulent schemes and artifices).  "A 'scheme or artifice to defraud' consists of forming a plan or devising some trick to perpetrate a fraud upon another.  A scheme to defraud thus implies a plan, and numerous acts may be committed in furtherance of that plan." *State v. Suarez*, 137 Ariz. 368, 373, 670 P.2d 1192, 1197 (App. 1983) (internal citations omitted).  "[A]n 'artifice' is an 'evil or artful strategy.'"  *State v. Haas*, 138 Ariz. 413, 423, 675 P.2d 673, 683 (1983).  Thus, Craft formed a plan to obtain money by defrauding her insurance company.  As part of that plan, she attempted to convince the insurance company that her car was a total loss due solely to the actions of other persons and that the loss was covered by her policy.  Burning her car was among the first acts in a series of acts Craft committed as part of that plan.  Therefore, a reasonable jury could find beyond a reasonable doubt that Craft burned her own car "unlawfully."

III.      The Failure to Define "Unlawfully"

¶9        In a related issue, Craft also argues the trial court erred when it failed to define "unlawfully" within the jury instructions regarding arson.  Craft, however, raised no objection to the omission of the instruction.  The failure to object to the omission of a jury instruction waives the right to raise the issue on appeal absent fundamental error.  *See State v. Gendron*, 168 Ariz. 153, 154, 812 P.2d 626, 627 (1991).  "To establish fundamental error, [a defendant] must show that the error complained of goes to the foundation of his case, takes away a right that is essential to his defense, and is of such magnitude that he could not have received a fair trial."  *State v. Henderson*, 210 Ariz. 561, 568, ¶ 24, 115 P.3d 601, 608 (2005).  Even once a defendant has established fundamental error, the defendant must still demonstrate the error was prejudicial.  *Id*. at ¶ 26.

¶10        The purpose of jury instructions is to inform the jury of the applicable law.  *State v. Noriega*, 187 Ariz. 282, 284, 928 P.2d 706, 708 (App. 1996).  A set of instructions need not be faultless.  The instructions, however, must give the jury an understanding of the issues and must not mislead the jury.  *See id.*  It is only when the instructions, taken as a whole, are such that it is reasonable to suppose the instructions would mislead the jury that a case should be reversed for error in the instructions.  *State v. Schrock*, 149 Ariz. 433, 440, 719 P.2d 1049, 1056 (1986).  "Where the law is

adequately covered by the instructions as a whole, no reversible error has occurred." *State v. Doerr*, 193 Ariz. 56, 65, ¶ 35, 969 P.2d 1168, 1177 (1998).

**¶11**        We find no error, fundamental or otherwise. The Arizona Criminal Code defines "unlawful" as "contrary to law or, where the context so requires, not permitted by law." A.R.S. § 13-105(40) (2012). Despite the statutory definition, this is "unlawful" in its ordinary sense and as commonly understood, not a legal term of art. *See* Webster's Third New International Dictionary 2502 (1969) (defining unlawful. 1. "not lawful: contrary to or prohibited by law: not authorized or justified by law: not permitted or warranted"; 2. "acting contrary to or in defiance of the law: disobeying or disregarding the law"); Black's Law Dictionary 1377 (Fifth ed. 1979) ("Unlawful. That which is contrary to, prohibited, or unauthorized by law. That which is not lawful. The acting contrary to, or in defiance of the law; disobeying or disregarding the law.").[1] "Where terms used in an instruction have no technical meaning peculiar to the law in the case but are used in their ordinary sense and commonly understood by those familiar with the English language, the court need not define these terms." *State v. Barnett*, 142 Ariz. 592, 594, 691 P.2d 683, 685 (1984); *See also State v. Valles*, 162 Ariz. 1, 6, 780 P.2d 1049, 1054 (1989).

**¶12**        In *State v. Eastlack*, our supreme court held it is not necessary to define "unlawfully" in an arson case where the term is used and understood in its ordinary sense and as commonly understood. *State v. Eastlack*, 180 Ariz. 243, 259-60, 883 P.2d 999, 1015-16 (1994). While Craft relies on *State v. Newfield*, 161 Ariz. 470, 473, 778 P.2d 1366, 1369 (App. 1989), for the proposition that it is fundamental error to fail to define "unlawfully" in an arson case, the supreme court in *Eastlack* distinguished *Newfield*, noting there was evidence in *Newfield* that would support a finding that the defendant was doing nothing more than burning his own car. *Eastlack*, 180 Ariz. at 259, 883 P.2d at 1015. We also note that the only offense charged in *Newfield* was arson, while in both *Eastlack* and the instant case there were additional charges that placed the counts of arson in context as "unlawful" acts. In *Eastlack*, the defendant set fire to a house he hid in and stole property from after he escaped from prison. *Id.* at 248, 883 P.2d at 1004. As explained above, in the instant case Craft burned her car as part of a plan to defraud her insurance company.

---

[1]        Despite Craft's assertions to the contrary, there is nothing in the statutory definition of "unlawful" that requires an "unlawful" act to also be a "criminal" act.

IV.     Sufficiency of the Evidence the Arson Was a Dangerous Offense

¶13     The jury found the arson was a dangerous offense. This rendered Craft ineligible for probation. *See* A.R.S. § 13-704(G) (2012). As charged in this case, a "dangerous offense" is "an offense involving the discharge, use or threatening exhibition of a deadly weapon or dangerous instrument." A.R.S. § 13-105(13) (2012). A "deadly weapon" is "anything designed for lethal use, including a firearm." A.R.S. § 13-105(15). A "dangerous instrument" is "anything that under the circumstances in which it is used, attempted to be used or threatened to be used is readily capable of causing death or serious physical injury." A.R.S. § 13-105(12). Fire can be a "dangerous instrument." *See State v. Gatliff*, 209 Ariz. 362, 365, ¶¶ 14-15, 102 P.3d 981, 984 (App. 2004).

¶14     Craft argues the evidence was insufficient to support the jury's determination that the arson was a dangerous offense. Craft argues that while the circumstances of the fire show it "could" have been dangerous and was "capable" of causing death or serious physical injury, the evidence failed to show it was "readily capable" of causing death or serious physical injury. Again, "[r]eversible error based on insufficiency of the evidence occurs only where there is a complete absence of probative facts to support the conviction." *Soto-Fong*, 187 Ariz. at 200, 928 P.2d at 624. "To set aside a jury verdict for insufficient evidence, it must clearly appear that under no hypothesis whatever is there sufficient evidence to support the conclusion reached by the jury." *Arredondo*, 155 Ariz. at 316, 746 P.2d at 486.

¶15     Viewed in the light most favorable to sustaining the verdict and resolving all reasonable inferences against Craft, the evidence was sufficient to permit the jury to find the arson was a dangerous offense. We have recognized, "[a] fire poses unique hazards. As a means of destruction, it is difficult to control and may quickly spread to nearby buildings or fields. Firemen and policemen are endangered. Neighbors and passersby, fearing that a structure is occupied, may attempt hazardous rescue efforts." *Newfield*, 161 Ariz. at 473, 778 P.2d at 1369 (quoting *State v. Durant*, 674 P.2d 638, 641 (Utah 1983)). Further, in this case two passersby found Craft's car fully engulfed in flames. They approached the burning car to determine if anyone was inside the car or otherwise injured. The car burned until the local fire department arrived nearly an hour later and extinguished the fire. The passersby testified it was "very windy" while they waited for the fire department to arrive and they were concerned the fire would spread to the area surrounding the parking lot.

**¶16**     Further, a fire investigator testified not only that fire is readily capable of causing death or serious physical injury, but that there is "never" an arson situation where fire is not readily capable of causing death or serious physical injury to the person starting the fire, firefighters and other first responders and/or bystanders. The investigator testified this is especially true in a situation such as this where the arsonist used accelerants to start the fire and because of the unique dangers a vehicle fire presents due to the risk of an exploding fuel tank.

**¶17**     Whether a fire is a "dangerous instrument" as defined in A.R.S. § 13-105(12) is a question for the jury. *State v. Wilson*, 135 Ariz. 395, 661 P.2d 659 (App. 1983). The above evidence was more than sufficient to permit the jury to find the arson was a dangerous offense pursuant to A.R.S. § 13-105(13).

V.     The Use of Impeachment Evidence as Substantive Evidence

**¶18**     Craft argues the trial court erred when it allowed the State to use prior inconsistent statements of a friend of Craft's not only to impeach the friend, but as substantive evidence of Craft's possession of drug paraphernalia. While Craft objected to the admission of this evidence below, Craft never objected to the evidence on this ground. Therefore, we review for fundamental error.

   A.     Background

**¶19**     The State charged Craft with possession of drug paraphernalia based on her possession of "a pipe, drug paraphernalia, to inject, ingest, inhale or otherwise introduce into the human body Methamphetamine, a dangerous drug," in violation of A.R.S. § 13-3415(A) (2012) (possession of drug paraphernalia). When asked what evidence the State had to support the paraphernalia charge, the State informed the court that officers found a pipe in Craft's purse at the time of her arrest and that it intended to introduce other evidence that Craft used drugs. That evidence would consist of testimony from a friend of Craft's who allowed Craft to live with her. The State explained that the friend kicked Craft out of her home three days before the fire because of Craft's drug use. The State argued this would show the paraphernalia was "actually" paraphernalia and not something else.

**¶20**     During her trial testimony, the friend admitted she kicked Craft and Craft's boyfriend out of her home the day before Mother's Day, but she denied it was because they used methamphetamine. She claimed she kicked them out because she suspected they were using

7

methamphetamine, among other unidentified reasons. The friend then denied she ever told any law enforcement officer she kicked Craft out of her home for using methamphetamine. The next day, a detective who interviewed the friend testified she told him she kicked Craft and her boyfriend out of her home because they used methamphetamine. Craft's sole objection was hearsay, which the court overruled.

B.  Discussion

¶21  Pursuant to *State v. Allred*, 134 Ariz. 274, 655 P.2d 1326 (1982), Craft argues the trial court erred when it allowed the State to use the friend's prior inconsistent statements to not only impeach the friend, but as substantive evidence Craft possessed the pipe with the intent to ingest methamphetamine. Our supreme court continues to recognize that it is permissible to admit prior inconsistent statements to both impeach and as substantive evidence of guilt. *State v. Skinner*, 110 Ariz. 135, 142, 515 P.2d 880, 887 (1973); *State v. Hernandez*, 232 Ariz. 313, 323, ¶ 47, 305 P.3d 378, 388 (2013). In *Allred*, however, the court acknowledged there can be a danger of unfair prejudice when impeachment evidence is used for substantive purposes. *Allred*, 134 Ariz. at 277, 655 P.2d at 1329. Before allowing the use of impeachment evidence for substantive purposes, a trial court should consider, among other factors, whether:

> 1. the witness being impeached denies making the impeaching statement, and
>
> 2. the witness presenting the impeaching statement has an interest in the proceeding and there is no other corroboration that the statement was made, or
>
> 3. there are other factors affecting the reliability of the impeaching witness, such as age or mental capacity, . . .
>
> 4. the true purpose of the offer is substantive use of the statement rather than impeachment of the witness,
>
> 5. the impeachment testimony is the only evidence of guilt.

*Id*. at 277, 655 P.2d at 1329 (alteration in original). The supreme court in *Allred* was primarily concerned "the truth-finding objectives of trial would be 'compromised when the key issue of guilt or innocence is likely to turn upon resolution of an issue of credibility in a 'swearing contest' between interested witnesses.'" *State v. Salazar-Mercado*, 232 Ariz. 256, 263, ¶ 25,

304 P.3d 543, 550 (App. 2013) (quoting *Allred*, 134 Ariz. at 277, 655 P.2d at 1329).

¶22            The *Allred* factors are, however, "instructive," not exhaustive. *Hernandez*, 232 Ariz. at 323, ¶ 48, 305 P.3d at 388. Further, they "are not to be applied mechanistically." *State v. Miller*, 187 Ariz. 254, 259, 928 P.2d 678, 683 (App. 1996). "[A]ssessing the danger of unfair prejudice requires a fact-specific examination into the nature of the prior inconsistent statement and the reason for its substantive use." *Hernandez*, 232 Ariz. at 323, ¶ 48, 305 P.3d at 388. Even where a majority of the *Allred* factors are present, a trial court may still find there is no danger of unfair prejudice and admit impeachment evidence for substantive purposes. *Miller*, 187 Ariz. at 259, 928 P.2d at 683.

¶23            Applying the *Allred* factors in this case, we find no error, fundamental or otherwise. While Craft's friend denied making the impeaching statement, the detective who presented the impeaching statement was not an interested witnesses. "A police officer is not per se 'interested' merely by virtue of his or her involvement in a criminal investigation, absent evidence of some personal connection with the participants or personal stake in the case's outcome." *Miller*, 187 Ariz. at 258, 928 P.2d at 682. Further, there were no other factors affecting the detective's reliability. While it appears the true purpose of the impeachment testimony was for its substantive use, the impeachment testimony was not the only evidence of guilt for possession of drug paraphernalia. As addressed in more detail below, law enforcement officers found the pipe in Craft's purse. The pipe was of a type commonly used to ingest methamphetamine. There was scorching on the pipe of a type that commonly occurs when the exterior of the pipe is heated with a flame to heat methamphetamine within the pipe. The pipe had a reside that, while not tested conclusively, appeared to an expert to be residue from methamphetamine. Further, Craft's purse also contained a scale of a type commonly used by drug users to weigh their drugs and there was a substance on the scale that appeared to an expert to be methamphetamine. Therefore, a majority of the *Allred* factors favored admissibility for both impeachment purposes and as substantive evidence. Further, the use of evidence for both impeachment purposes and as substantive evidence was

not otherwise unduly prejudicial, nor did the danger of unfair prejudice outweigh the probative value of the evidence.[2]

VI.     Admission of Evidence the Residue on the Scale was Methamphetamine

¶24        Craft asserts the trial court erred when it admitted evidence that residue on the scale found in Craft's purse was methamphetamine. Craft argues that while the State disclosed the existence of the scale and its alleged purpose, the State did not disclose that a law enforcement witness would testify the substance on the scale was methamphetamine. Craft concedes she raised no objection below.

¶25        We find no error, fundamental or otherwise. The State disclosed the scale and made it available to Craft for inspection. That disclosure necessarily included anything on the scale. The State disclosed the identity of the witness and further disclosed it may call any law enforcement witness as an expert in any area of his or her training or experience, "including expert knowledge of illegal drugs, their possession or sale, useable amounts, or any other topic." This was sufficient to comply with the State's disclosure requirements. *See* Ariz. R. Crim. P. 15.1. Regarding the failure to outline in detail the witness's proposed testimony that the substance on the scale was methamphetamine, nothing in Rule 15.1 requires the State to provide "a detailed script of a witness's testimony." *State v. Arvallo*, 232 Ariz. 200, 205, ¶ 30, 303 P.3d 94, 99 (App. 2013).[3]

---

[2]        Within her argument on this issue, Craft makes a cursory reference to the court's failure to give a limiting instruction regarding the use of this evidence. The failure of a trial court to give a limiting instruction sua sponte in the absence of a request by the defendant is not fundamental error. *See State v. Taylor*, 127 Ariz. 527, 530-31, 622 P.2d 474, 477-78 (1980).

[3]        Within her argument on this issue, Craft provides a one sentence argument in which she asserts the witness was not qualified to provide this testimony. "Merely mentioning an argument is not enough." *State v. Moody*, 208 Ariz. 424, 452, ¶ 101, n.9, 94 P.3d 1119, 1147 (2004). Therefore, we do not address this argument in the context of this issue.

VII.     Sufficiency of the Evidence to Support the Conviction for Possession of Drug Paraphernalia

¶26          Craft contends the evidence was insufficient to support her conviction for possession of drug paraphernalia. Specifically, Craft argues a detective was not competent to testify the residue on the pipe was methamphetamine and that the evidence was otherwise insufficient. Again, we will reverse for insufficient evidence only where there is a complete absence of probative facts. *Soto-Fong*, 187 Ariz. at 200, 928 P.2d at 624. The evidence must be insufficient to support the conviction under any hypothesis whatsoever. *Arredondo*, 155 Ariz. at 316, 746 P.2d at 486.

¶27          A sheriff's detective testified regarding his training and experience in the investigation of criminal matters involving drug use. He had training in the identification of drugs and drug paraphernalia and continued with that training regularly through continuing education. This included identifying drugs in powdered form. Through his training and experience, the detective was familiar with how people obtain, store and use drugs, including methamphetamine.

¶28          The detective testified the glass pipe found in Craft's purse had black charring typically caused by using a lighter or other source of flame to heat a "rock" of methamphetamine in the pipe. A person would not use a flame such as this to heat ordinary tobacco, which requires much less heat. The detective further testified that in his experience and training, the use of methamphetamine leaves a smell like nothing else, and the charring and residue found on this pipe had that distinctive smell. The detective also testified that in addition to the pipe, Craft's purse contained a digital scale commonly used for personal drug use. Based on his experience and training, the detective believed a white, rocky substance on the scale looked "exactly" like methamphetamine. The detective conceded that he could not say conclusively that any substance on the scale or the pipe was methamphetamine.

¶29          The determination of the accuracy, weight and credibility of the detective's testimony as an expert on drug use and whether to accept or reject that testimony is a matter for the jury. *Pipher v. Loo*, 221 Ariz. 399, 404, ¶ 17, 212 P.3d 91, 96 (App. 2009). Viewed in the light most favorable to sustaining the verdict and resolving all conflicts and reasonable inferences against Craft, this evidence was sufficient to support her conviction for possession of drug paraphernalia.

VIII.    The Instructions Regarding Possession of Drug Paraphernalia

**¶30**        Craft argues the trial court erred when it failed to instruct the jury regarding the fourteen factors identified in A.R.S. § 13-3415(E) (2012) that a jury should consider when determining whether an object is drug paraphernalia.[4]  Craft concedes that she neither submitted a proposed instruction regarding these factors nor objected to its omission. Therefore, she has waived this issue absent fundamental error.  *See Gendron*, 168 Ariz. at 154, 812 P.2d at 627.

**¶31**        We find no error of any sort.  While A.R.S. § 13-3415(E) provides a fact finder "shall" consider the fourteen factors in its determination of whether an object is drug paraphernalia, those factors are not elements of the offense and Craft cites no authority that holds the failure to instruct the jury on those factors constitutes error, let alone fundamental error.  Further, Craft cites no authority that provides § 13-3415(E) is an exclusive laundry list that requires acquittal based on the number of factors a jury does or does not find, even if none of the factors apply.  Section 13-3415(E) itself provides the fact finder shall consider those factors "in addition to all other logically relevant factors."  Craft was free to address the fourteen factors in her cross-examination of the detective and/or argue in closing that those factors indicated she possessed the pipe for lawful purposes and not to use methamphetamine. The trial court's failure to instruct the jury on those factors, however, did not constitute error.

IX.    Prosecutorial Misconduct

**¶32**        Finally, Craft presents a multitude of claims of prosecutorial misconduct, all but two of which allegedly occurred during closing argument.  As explained more fully below, Craft raised no objections to a majority of the alleged misconduct.  A failure to object to alleged prosecutorial misconduct at the time of trial waives the issue absent fundamental error.  *State v. Wood*, 180 Ariz. 53, 66, 881 P.2d 1158, 1171 (1994).  In our determination of whether a prosecutor's conduct amounts to fundamental error, we focus our inquiry on the probability the conduct influenced the jury and whether the conduct denied the defendant a fair trial.  *Id.*  "The focus is on the fairness of the trial, not the culpability of the prosecutor."  *State v. Bible*, 175 Ariz. 549, 601, 858 P.2d 1152, 1204 (1993). Further, we view a prosecutor's argument in the context of the arguments

---

[4]        We need not identity those fourteen factors here.

of the defendant. *State v. Kerekes*, 138 Ariz. 235, 239, 673 P.2d 979, 983 (App. 1983).

### A. Misleading the Court

**¶33** Craft argues the prosecutor twice misled the court during trial. She claims the prosecutor first misled the court when he informed the court that the friend who kicked Craft out of her home had personal knowledge that Craft used methamphetamine. Craft further argues the prosecutor misled the court when he failed to disclose to the court that a detective would testify that the substance on the scale found in Craft's purse looked like methamphetamine. Craft never argued below that either instance misled the court or otherwise constituted prosecutorial misconduct.

**¶34** We find no prosecutorial misconduct. Regarding the friend's personal knowledge of Craft's use of methamphetamine, as explained above in section V regarding the use of impeachment evidence as substantive evidence, the prosecutor had a good faith belief to inform the court that he believed the friend saw Craft use methamphetamine. The prosecutor was not required to be sufficiently prophetic to predict that Craft's friend would later change her story and deny not only what she told law enforcement officers during an interview, but what she told the prosecutor personally mid-trial. Further, we fail to see how the prosecutor could have misled the court when it was the prosecutor who later informed the court that Craft's friend changed her story and that he planned to impeach her.

**¶35** Regarding the failure to disclose the detective's proposed testimony to the court, Craft cites no authority for the proposition that the State must make the disclosures required by Rule 15.1 to the court as well as to the defendant. Further, as noted above, the failure to disclose this evidence to Craft was not error. Therefore, the failure to disclose it to the court was not error of any sort.

### B. Comments on the Failure to Testify and Present Evidence

**¶36** Craft next argues that during closing and rebuttal argument, the prosecutor improperly commented on Craft's failure to testify and present evidence. Specifically, Craft argues the prosecutor:

> 1. Should not have argued in closing that no one testified they fished with Craft at the river the night the car burned;

2. Should not have argued in closing that Craft did not challenge the evidence that she admitted to a friend that she burned her car;

3. Should not have argued in rebuttal that there was no evidence Craft fished at "Tuber's Landing" the night of the fire; and

4. Should not have argued in rebuttal that no one testified he or she went to hookah lounges with Craft and smoked pipe tobacco and, therefore, the evidence showed Craft used the pipe to ingest methamphetamine.

Craft raised no objection to claims 1, 2 and 4. The trial court overruled Craft's objection to claim 3, but Craft stated no grounds for the objection. Therefore, Craft failed to preserve any of these claims of prosecutorial misconduct absent fundamental error.

¶37        A prosecutor may not comment on a defendant's invocation of the right to remain silent. *State v. Wilson*, 185 Ariz. 254, 258, 914 P.2d 1346, 1350 (App. 1995). "To be improper, 'the prosecutor's comments must be calculated to direct the jurors' attention to the defendant's exercise of his [F]ifth [A]mendment privilege.'" *State v. Hughes*, 193 Ariz. 72, 87, ¶ 64, 969 P.2d 1184, 1199 (1998) (citation omitted). The comment is improper only if "the language used was manifestly intended or was of such a character that the jury would naturally and necessarily take it to be a comment on the failure to testify." *State v. Schaaf*, 169 Ariz. 323, 333, 819 P.2d 909, 919 (1991) (quoting *State v. Fuller*, 143 Ariz. 571, 575, 694 P.2d 1185, 1189 (1985)).

¶38        A prosecutor may, however, comment on a defendant's failure to introduce evidence to support his or her story. *Bible*, 175 Ariz. at 602, 858 P.2d at 1205 (1993). The only restriction is that the comment may not comment on a defendant's silence, and it must not appear that the defendant is the only person who can contradict the state's evidence. *State v. Superior Court (Corcoran)*, 153 Ariz. 157, 160, 735 P.2d 767, 770 (1987); *State v. Bracy*, 145 Ariz. 520, 535, 703 P.2d 464, 479. Commenting on a defendant's failure to introduce evidence "is neither improper nor shifts the burden of proof to the defendant so long as such comments are not intended to direct the jury's attention to the defendant's failure to testify." *State v. Sarullo*, 219 Ariz. 431, 437, ¶ 24, 199 P.3d 686, 692 (App. 2008). Finally, the state may also comment on a defendant's failure to produce a witness when the witness would allegedly give testimony favorable to the

defendant. *State v. Filipov*, 118 Ariz. 319, 324, 576 P.2d 507, 512 (App. 1977).

¶39          We find no prosecutorial misconduct.  The prosecutor's arguments did not comment directly or indirectly on Craft's failure to testify, did not direct the jurors' attention to Craft's failure to testify and were not "of such a character that the jury would naturally and necessarily take it to be a comment on the failure to testify."  *Schaaf*, 169 Ariz. at 333, 819 P.2d at 919.  The prosecutor's argument was a fair comment on Craft's failure to call witnesses or otherwise introduce evidence to support specific aspects of her defense.

¶40          We also note that the argument regarding "Tuber's Landing" and the "hookah lounge" occurred in rebuttal and were in direct response to Craft's closing argument.  Regarding the comment about "Tuber's Landing," Craft displayed a slide to the jury during her closing argument that indicated an investigating officer never investigated the area near "Tuber's Landing" where Craft purportedly told the officer she and her companions had parked to go fishing.  The trial court agreed with the prosecutor there was no evidence to support that representation and the only evidence was that Craft never told the officer she was at Tuber's Landing.  The court ordered Craft's counsel not to tell the jury Craft or anyone else claimed they were at Tuber's Landing.  The court permitted counsel only to argue that based on Craft's description of the road she travelled that night, it was *arguable* Craft was at Tuber's Landing.  The prosecutor's comment regarding Tuber's Landing fairly addressed the slide and defense counsel's subsequent argument.  Regarding the comment about the "hookah lounge," Craft argued that no one ever tested the residue on the pipe and nobody could say conclusively it was methamphetamine, thereby insinuating the residue was from something else.  The prosecutor's argument regarding how no witness testified Craft used the pipe to smoke tobacco was a fair response, even with the "hookah lounge" comment.  "Prosecutorial comments which are fair rebuttal to comments made initially by the defense are acceptable."  *State v. Duzan*, 176 Ariz. 463, 468, 862 P.2d 223, 228 (App. 1993).

          C.          Disparagement of Defense Counsel

¶41          Craft argues the prosecutor also engaged in misconduct when he disparaged Craft's counsel during his rebuttal argument. Specifically, Craft argues the prosecutor disparaged defense counsel when:

1. In regard to Craft's slide that identified Tuber's Landing, the prosecutor argued, "And if you have to resort to arguments like that . . . .";

2. The prosecutor argued defense counsel wanted the jury to "cherry pick" the evidence that was favorable to Craft and ignore everything else, be hypercritical and hyper-technical of the evidence and use a "death by a 1000 cuts" approach;

3. The prosecutor argued defense counsel would never be satisfied with any criminal investigation to a degree that she agreed the investigation was "perfect" and had nothing else to say, then questioned why anyone was arguing about the investigation in this case;

4. The prosecutor argued the fire investigator was more qualified to discuss fire than defense counsel, who asked the fire investigator "three questions" on cross-examination but then lectured the jury at length on how fire works; and

5. The prosecutor suggested defense counsel misstated the law when he argued she was adding elements to the offense of possession of drug paraphernalia.

Craft made a generic objection to argument 1 which the trial court sustained for unspecified reasons. Craft also eventually preserved her misconduct objection to argument 2, but the court overruled her. Craft raised no objection to arguments 3 or 5 and objected to argument 4 on grounds not raised on appeal.

¶42 Regardless of whether Craft preserved the issues, we find no prosecutorial misconduct. To attack a defendant's argument in rebuttal is not an attack on the defendant's counsel. *See State v. Amaya-Ruiz*, 166 Ariz. 152, 171, 800 P.2d 1260, 1279 (1990). Further, prosecutors have wide latitude in presenting closing arguments. "Excessive and emotional language is the bread and butter weapon of counsel's forensic arsenal, limited by the principle that attorneys are not permitted to introduce or comment upon evidence which has not previously been offered and placed before the jury." *State v. Jones*, 197 Ariz. 290, 305, ¶ 37, 4 P.3d 345, 360 (2000). It is not improper for a prosecutor to go so far as to argue a defense counsel's questions or conduct were "a defense ploy," "improper" and/or "outrageous." Such comments are well within the latitude afforded counsel in closing argument. *State v. West*, 176 Ariz. 432, 446, 862 P.2d 192, 206 (1993) (overruled on other grounds by *State v. Rodriguez*, 192

Ariz. 58, 64, ¶ 30, n.7, 961 P.2d 1006, 1012 (1998). The prosecutor's comments in this case were far more tame.

¶43 Further, these arguments were permissible rebuttal. As noted above, defense counsel displayed the Tuber's Landing slide before the jury when there was no evidence to support some of the information in the slide. As is to be expected, defense counsel also focused on evidence or the absence thereof that favored Craft's defense and attacked various law enforcement witness's investigations of the case. The prosecutor's rebuttal was a fair response. Finally, defense counsel arguably added an element to the offense of possession of drug paraphernalia when she argued there was no evidence Craft used drugs "in close proximity to the time of her arrest." *See* A.R.S. § 13-3415(A) (2012) (possession of drug paraphernalia). It was fair rebuttal for the prosecutor to respond by arguing this was an "attempt to add a requirement" of recent use to the paraphernalia charge. Finally, while it was within the trial court's discretion to sustain Craft's generic objection to the prosecutor's gratuitous "and if you have to resort to arguments like that" comment about the Tuber's Landing slide, that single comment did not deny Craft a fair trial.

D.    Arguing Motive

¶44 Finally, Craft argues the prosecutor engaged in misconduct when he argued several times that Craft's motive for the arson was she needed money because Craft's friend kicked her out of her home for using methamphetamine. Craft relies on the fact that Craft's friend changed her story at trial to claim that she never saw Craft use methamphetamine and only kicked Craft out of the home because she suspected she used methamphetamine. Craft raised no objections below.

¶45 We find no prosecutorial misconduct. "During closing arguments, counsel may summarize the evidence, make submittals to the jury, urge the jury to draw reasonable inferences from the evidence, and suggest ultimate conclusions." *Bible*, 175 Ariz. at 602, 858 P.2d at 1205. As noted above, Craft's friend testified she kicked Craft out of her home because she suspected Craft was using methamphetamine. This testimony alone was sufficient to permit the prosecutor to argue the reasonable inference that Craft's motive for the arson was she needed money because her friend kicked her out of her home for using methamphetamine, rendering her homeless. The argument was even more proper in light of the additional testimony that Craft's friend actually told at least one law enforcement officer she kicked Craft out of

her home because she was using methamphetamine, not simply because she suspected Craft was using methamphetamine.

X.     Conclusion

**¶46**     Because we find no error, we affirm Craft's convictions and sentences.



Ruth A. Willingham · Clerk of the Court
FILED: mjt